Filed 6/25/13  Nelson v. Alaska Airlines CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KENNETH DON NELSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>        Defendant and Respondent. | A136319<br><br>(San Francisco County<br>Super. Ct. No. CGC 08-476321) |

Plaintiff Kenneth Don Nelson sued defendant Alaska Airlines in San Francisco County Superior Court, claiming that defendant was not entitled to charge him and similarly situated persons an approximately $22 "Mexican tourism tax" when selling them tickets for travel between California and Mexico.  Defendant asserted by demurrers that plaintiff's claims were preempted by the Airline Deregulation Act (49 U.S.C. § 41713) (ADA), and had other defects.

Plaintiff appeals after the trial court sustained defendant's demurrer to plaintiff's first amended complaint and, after we dismissed plaintiff's previous appeal without prejudice for lack of jurisdiction,[1] denied his motion for leave to file a second amended complaint, struck the class allegations in the first amended complaint, and entered judgment in favor of defendant.  Plaintiff argues the trial court erred in concluding that his claims were preempted by the ADA, denying his motion for leave to file his second

---

[1]  Plaintiff has incorporated the record from the previous appeal, without objection from defendant.  We take judicial notice of our previous unpublished opinion in that appeal, case No. A130467, pursuant to Evidence Code section 451, subdivision (a).

1

amended complaint, and staying discovery pending the outcome of defendant's demurrers. We find no error and affirm the judgment.

## BACKGROUND

In his original complaint, filed in June 2008, plaintiff alleged two state law causes of action, for breach of written contract and a common count for money had and received, against defendant. His complaint centered around his assertion that Alaska Airlines was not entitled to charge him and similarly situated persons the approximately $22 Mexican tourism tax when selling them tickets for travel between California and Mexico because their Mexico resident status was such that they were exempt from this tax.

Defendant removed the case to federal court, but it was remanded to the Superior Court for the City and County of San Francisco in October 2008. In March 2009, plaintiff served interrogatories and document requests to defendant, who filed a demurrer a few days later. Although it is unclear from the court's case management conference minutes, the parties acknowledge that at case management conferences later in March 2010, the superior court issued a stay of discovery pending rulings from the Ninth Circuit in putative class actions challenging the collection of the Mexican tourist tax, including *Sanchez v. Aerovias De Mexico, S.A. DE C.V.* (9th Cir. 2009) 590 F.3d 1027 (*Sanchez*) and *McMullen v. Delta Air Lines, Inc.* (9th Cir. 2010) 361 Fed. Appx. 757 (*McMullen II*), which we will discuss.

The trial court subsequently sustained defendant's demurrer with leave to amend. It ruled that plaintiff's causes of action were preempted by the ADA and, further, that plaintiff had failed to plead facts sufficient to constitute a cause of action. The court denied plaintiff's request to lift the stay on discovery.

Plaintiff subsequently filed his first amended complaint, which alleged the same two state law causes of action, for breach of written contract and a common count for money had and received. Plaintiff's first amended complaint also centered around his assertion that Alaska Airlines was not entitled to charge him and similarly situated persons the Mexican tourism tax of around $22 when selling them tickets for travel

2

between California and Mexico because their Mexico resident status was such that they were exempt from this tax. His principal amendment was the allegation that defendant engaged in a course of performance in which it assumed an obligation not to charge exempt passengers the Mexican tourism tax and voluntarily acknowledged its contractual obligation not to collect the Mexican tourism tax from exempt passengers. Defendant attached to his first amended complaint the contract he was relying on, the International Contract of Carriage (ICC).

Defendant demurred to plaintiff's first amended complaint. The trial court sustained this demurrer with leave to amend for much the same reasons as those stated in its previous demurrer ruling. It set a deadline of October 15, 2010, for the filing of a second amended complaint, and denied defendant's request to lift the discovery stay.

As we discussed in the previous appeal, case No. A130467, defendant's demurrer referred to plaintiff Kenneth Don Nelson only. At the demurrer hearing, plaintiff expressed doubt about filing a second amended complaint. The court stated it would enter judgment on its order sustaining defendant's demurrer in the event that plaintiff chose not to file a second amended complaint. Its subsequent order sustaining the demurrer referred to plaintiff Kenneth Don Nelson only.

At a subsequent case management conference, the court and the parties discussed that plaintiff had decided not to file a second amended complaint, and defendant had submitted a proposed judgment to the court. The court declined to issue the proposed judgment, stating:

"And I pointed out to you off the record that the proposed form of judgment that was sent to me by [defendant's counsel] does not include consideration of what happens to the inchoate class. The demurrer was obviously a demurrer directed to the named plaintiff and the only purported class representative, and so counsel, I think you have indicated that you want to get together in the coming days and consider your respective views on where, if anywhere, we should go from here with respect to the purported class, and to that end we've set another case management conference . . . ."

3

Apparently, the parties could not agree about what to do about the "inchoate class." Plaintiff filed a notice of appeal based on the "death knell" doctrine in class action law. A few days later, defendant moved to dismiss the class allegations. Plaintiff objected to defendant's proposed order granting defendant's motion and defendant's proposed judgment. He argued the court's order sustaining the demurrer had "disposed of all the issues in this case" and had the effect of dismissing the entire class action suit, and his filing of a notice of appeal divested the court of jurisdiction to rule on defendant's motion pursuant to the "death knell" doctrine.

The trial court subsequently ruled that, pursuant to Code of Civil Procedure section 916, subdivision (a), plaintiff's filing of his notice of appeal divested the court of jurisdiction to rule on defendant's motion "whether or not this court's order sustaining defendant's demurrer is appealable." The court did not rule on defendant's motion, the class allegations were not dismissed, the case was put off calendar pending this appeal, and a final judgment was not entered.

Based on these facts and circumstances, we concluded in case No. A130467 that we did not have jurisdiction to consider plaintiff's appeal in the absence of a final judgment, and dismissed the appeal without prejudice.

Subsequently, plaintiff moved the trial court to grant leave to file a second amended complaint, and defendant moved to strike the proposed second amended complaint as improperly offered and, in any event, futile for the same reasons that the original complaint and first amended complaint failed.

The trial court denied plaintiff leave to file a second amended complaint, found defendant's motion was moot in light of that ruling, and granted a motion by defendant to strike the class allegations in the first amended complaint. The court found that plaintiff, by not timely amending the complaint, had "forfeited any right to assert any other claims." The court determined that, without a plaintiff to represent a class, "it's obvious that the class allegations ought to be stricken." The trial court dismissed the individual claims by plaintiff with prejudice and the claims of the putative class members without prejudice.

4

The trial court subsequently entered judgment in favor of defendant and against plaintiff, who then filed a timely notice of appeal.[2]

Plaintiff, at the same time that he filed his opening brief in this appeal, filed a request for judicial notice, which we denied by order dated November 28, 2012. In his reply brief, plaintiff urges this court to reconsider our denial regarding one document, the "Customer Service Commitment," which is referred to in the ICC as incorporated by reference, and which, as stated in the ICC, " 'further explains, augments and expands upon Carrier's policies, procedures, methods of operation, obligation and dedication to customer safety, service and satisfaction.' " We decline to do so because, as defendant points out, " '[i]t has long been the general rule and understanding that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration." ' " (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239; *Pulver v. Avco Fin. Servs.* (1986) 182 Cal.App.3d 622, 632 ["[a]s a general rule, documents not before the trial court cannot be included as part of the record on appeal and thus must be disregarded as beyond the scope of appellate review"].) By referring to the documents he included in his request for judicial notice, plaintiff's appellate papers refer to matters outside the record of this appeal. We have disregarded these documents and plaintiff's related arguments and contentions.

## DISCUSSION

### I. *The Airline Deregulation Act Preempts Plaintiff's Causes of Action*

Plaintiff's first argument, although not stated exactly this way, is that the trial court improperly sustained defendant's demurrer to his first amended complaint on the ground that the ADA preempted the causes of action in his first amended complaint. We disagree.

---

[2] Although plaintiff's appellate papers purport to be on behalf of himself and the "Class," no class was ever certified and the notice of appeal identifies plaintiff alone is the appellant. Therefore, we refer to appellant as "plaintiff."

5

## A. *Relevant Law*

"We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons." (*Tanen v. Southwest Airlines Co.* (2010) 187 Cal.App.4th 1156, 1162.)

The ADA provides in relevant part that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." (49 U.S.C. § 41713(b)(1).)

As the Ninth Circuit pointed out in *Sanchez*, *supra*, 590 F.3d 1027, this preemption clause has been addressed a number of times by the United States Supreme Court, most notably in *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374 (*Morales*), *American Airlines, Inc. v. Wolens* (1995) 513 U.S. 219 (*Wolens*), and *Rowe v. New Hampshire Motor Transp. Assn.* (2008) 552 U.S. 364. (*Sanchez*, at p. 1030.) The *Sanchez* court observed:

"From these cases we know that Congress enacted the ADA to deregulate domestic air transport, and included the preemption clause 'to ensure that the States would not undo federal deregulation with regulation of their own.' *Morales*, 504 U.S. at 378. Also, the ADA 'was designed to promote maximum reliance on competitive market forces.' *Wolens*, 513 U.S. at 230 (quotation marks omitted); 49 U.S.C. § 40101(a)(6).

"In *Morales*, the Court construed the text 'related to' as plainly meaning 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with.' ' 504 U.S. at 383 (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)). 'Related to' therefore 'express[es] a broad pre-emptive purpose.' [Citation.] Thus, a state law or enforcement action is 'related to' a 'price, route, or service' if it 'has a connection with or reference to' a 'price, route, or service,' [citations]. At the same

6

time, even if a claim does relate to 'price,' the ADA preemption clause does not 'shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.' *Wolens*, [*supra*,] 513 U.S. at 228. In *Wolens*, the Court focused on the rest of the text— 'enact or enforce any law'—in the context of a challenge to the airline's retroactive changes in the terms and conditions of its frequent flyer program. Although the plaintiffs' claims there did relate to 'rates' and 'services,' it held that the preemptive scope of the ADA, as explicated in *Morales*, allows for court enforcement of privately-ordered contract terms set by the parties themselves." (*Sanchez*, *supra*, 590 F.3d at p. 1030.)

*Wolens*, therefore, created an exception to the ADA's broad preemption of a state law or enforcement action, as determined in *Morales*, for "self-imposed undertakings," including as alleged in breach of contract actions. As explained in *McMullen v. Delta Air Lines, Inc.* (N.D.Cal., Sep. 30, 2008, No. 08-1523 JSW) 2008 U.S. Dist. LEXIS 75720 (*McMullen I*), "[i]n *Wolens*, plaintiffs complained that defendant American Airlines devalued their already-earned mileage credits by altering what kinds of benefits they could be exchanged for, and sought relief on a breach of contract theory. [Citation.] In allowing plaintiff's breach of contract claims to go forward, the Supreme Court held that it did 'not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.' [Citation.] Instead, the ADA preempts state actions that 'refer to binding standards of conduct that operate irrespective of any private agreement.' [Citation.] In sum, the 'distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.' " (*Id*. at pp. *8-*9.)

The *Morales* court also recognized that some state actions may affect airline fares in " 'too tenuous, remote, or peripheral a manner' to have a pre-emptive effect." (*Morales*, *supra*, 504 U.S. at p. 390.) Thus, "[t]aken together, *Morales*, *Wolens,* and

7

*Rowe* stand for the proposition that for a claim to be preempted by the ADA, ' "two things must be true[:] (1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." ' " (*Tanen v. Southwest Airlines Co.*, *supra*, 187 Cal.App.4th at pp. 1166-1167.)

## B. *Relevant Proceedings Below*

### 1. *Plaintiff's Allegations in His First Amended Complaint*

In his first amended complaint, plaintiff alleged that defendant collected "a tourism tax imposed by the Mexican government . . . from all non-exempt passengers traveling on defendant airline on flights between California and Mexico. Defendant airline, in turn, is supposed to remit the tourism tax receipts to the Mexican government. Defendant airline also has been collecting from some of its exempt passengers who purchase an airline ticket from defendant in California sums in addition to the applicable fares and taxes under the guise of collecting the Mexican tourism tax. Passengers who are residents (holding FM-2 or FM-3 Visas) or citizens of Mexico, as well as diplomats, children under two years of age and persons staying in Mexico less than 24 hours are exempt from the Mexican tourism tax."

Plaintiff further alleged that between June 2006 and May 2008, he purchased approximately 20 round-trip airline tickets from defendant for travel between San Francisco, California and San Jose Cabo, Mexico, and was charged the Mexican tourism tax each time. However, because he held either an FM2 or FM3 visa, he was exempt from paying the tax.

Plaintiff also made class allegations on behalf of "[a]ll persons who purchased airline tickets in California from defendant airline for travel on defendant airline on flights between California and Mexico and who were charged by defendant the Mexican tourism tax but who were exempt from paying that tourism tax."

Plaintiff further alleged on information and belief that defendant "created a process that assessed and collected the Mexican tourism tax from some but not all exempt passengers flying between California and Mexico," and collected the tax from "most but

8

not all exempt passengers flying between California and Mexico. Based upon this course of performance, defendant assumed an obligation not to charge exempt passengers the Mexican tourism tax." Furthermore, plaintiff alleged, defendant "voluntarily acknowledged its contractual obligation not to collect the Mexican tourism tax from exempt passengers through its course of performance in complying with the [ICC]. In breach of this obligation, defendant has collected the Mexican tourism tax from some but not all exempt passengers in the past and continues to collect the Mexican tourism tax from some but not all exempt passengers at the present time."

In his breach of written contract cause of action, plaintiff alleged that defendant entered into written contracts in California with plaintiff and other class members for air travel between California and Mexico, the terms of which are contained in the respective airline tickets and the ICC found at defendant's web site.[3] Plaintiff specifically relied on the following ICC provision: " 'Any tax or other charge imposed by government authority and collectable from a passenger will be in addition to the published fares and charges.' " This provision is contained in the ICC attached to the first amended complaint, under the heading, "Rule 40AS - Taxes." He alleged that he and the class purchased the tickets that included charges for the Mexican tourism tax, although defendant "promised plaintiff and other class members that defendant only charges applicable taxes imposed by government authorities it is required to charge from passengers who owe the taxes." Thus, plaintiff contended, defendant breached its written contracts with plaintiff and class members "by improperly charging them the amount of the Mexican tourism tax . . . for each airline ticket which was not applicable to plaintiff and class members due to their exempt status," causing damages in the amount charged on each ticket for the Mexican tourism tax plus interest.

In his other cause of action, for money had and received, plaintiff alleged that defendant became indebted to plaintiff and class members for money had and received by

---

[3] Plaintiff attached to the complaint a true and correct copy of the ICC found at defendant's website "at the time of the purchase of the tickets and/or the filing of the Complaint."

defendant for the use and benefit of plaintiff and other class members. Defendant having made no payment, plaintiff alleged that he and class members were owed the amount improperly charged and retained by defendant for the Mexican tourism tax, plus interest.

## 2. *The Court's Sustaining of Defendant's Demurrer*

In its demurrer to plaintiff's first amended complaint, defendant argued that the ADA preempted plaintiff's causes of action and that plaintiff's allegations, including his course of performance allegations, did not establish a self-imposed undertaking under the *Wolens* exception. Defendant also argued that the first amended complaint failed to allege all of the elements of each cause of action. Plaintiff opposed each of defendant's grounds for demurrer.

The trial court sustained the demurrer. Regarding defendant's claim of ADA preemption, the court concluded that plaintiff's causes of action were "related to price, route, or service of an air carrier" within the meaning of the ADA preemption provision (49 U.S.C. § 41713(b)(1)), based on, among other cases, *Morales*, *supra*, 504 U.S. at pages 383-384 and *Sanchez*, *supra*, 590 F.3d at page 1030.

The court concluded that plaintiff's claims did not fall within the *Wolens* exception for several reasons. First, the court determined, although plaintiff alleged a breach of a written contract, his first amended complaint referenced only one ICC provision, Rule 40AS, which stated (as we have already discussed), " 'Any tax or other charge imposed by government authority and collectible from a passenger will be in addition to the published fares and charges.' " The court found this "allegation describes a mere notice that the published fares and charges do not include taxes that are imposed by governmental authorities and collectible from passengers. It says nothing more. For example, it says nothing about what will be charged to the passengers; indeed, it says nothing about [defendant's] obligations at all. Specifically, it is not a promise not to charge or collect the Mexican [t]ourism [t]ax from exempt passengers, like the plaintiff, and it is not a promise not to charge more than the published fares and charges."

The court also found that the complaint did not include "any factual allegations that would support the conclusion that the [defendant] ever made any promise to the

10

plaintiff to evaluate whether he might not owe the Mexican [t]ourism tax." Also, there was "no factual allegation that at any relevant time plaintiff actually understood, or that he could reasonably have understood, that [defendant] was making or had made any promise to him in any way predicated on his tax status," including any course of conduct between plaintiff and defendant.

The court also addressed plaintiff's allegation in the first amended complaint that defendant "promised plaintiff and other class members that defendant only charges applicable taxes imposed by government authorities it is required to charge from passengers who owe the taxes." After a review of legal authorities, the court concluded this was "insufficient as a pleading because it neither quotes from, attaches, or pleads the legal effect of the contract, and is conclusory. To say that somebody 'promised' something, as opposed to saying at least in substance what they said, is a conclusion. . . . [P]laintiff has not pled the legal effect of the contract because he has not alleged the substance of any term of the contract that would give rise to the alleged obligation. Therefore, the sentence just quoted and similar allegations are nullities on this demurrer."

The court also found the deficiencies in plaintiff's pleadings were not overcome by plaintiff's allegations that defendant, by engaging in a course of performance in collecting the Mexican tourism tax from most but not all exempt passengers, assumed an obligation to not charge exempt passengers the tax. Noting that plaintiff argued this course of performance not to introduce extrinsic evidence of an additional term of the contract, but in order to show the contract had another meaning to which it was susceptible, the court concluded that "[t]he fallacy of plaintiff's position . . . is that plaintiff has failed to allege the existence of any contractual agreement or provision that is reasonably susceptible to the interpretation that [defendant] agreed with plaintiff not to charge him the Mexican tourism tax. In other words, by its alleged course of conduct, [defendant] could not have, in plaintiff's conclusory words, 'acknowledge its contractual obligation' not to collect the tax from plaintiff because [defendant] had no such contractual obligation."

11

"In short," the court stated, "nothing in the alleged writings and nothing in the alleged course of conduct, whether the writings and course of conduct are considered separately, or together, supports the conclusion that there was contractual agreement not to charge plaintiff the tax." The court sustained the demurrer on the first cause of action, both because it was preempted by the ADA and, "alternatively . . . because the complaint does not allege facts sufficient to support the conclusion that [defendant] agreed not to collect the Mexican tourism tax from the plaintiff."

As for plaintiff's second cause of action, for money had and received, the court sustained the demurrer as well because, as stated by this court in *McBride v. Boughton* (2004) 123 Cal.App.4th 379, "[w]hen a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable." (*Id*. at p. 394.)

## C. *Analysis*

Plaintiff makes a number of arguments, none of which establish that the trial court erred in its rulings.

### 1. *Plaintiff's "Remote" Claim*

First, plaintiff argues that the Mexican tourism tax has too remote an impact on the price of defendant's airline ticket to be "related to" "price" under *Morales*, *supra*, 504 U.S. 374, and, therefore, his claims are not preempted by the ADA.

*Morales* dealt with whether the ADA preempted states from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes. (*Morales*, *supra*, 504 U.S. at p. 378.) While plaintiff acknowledges the broad scope of ADA preemption for those matters "related to" "price" established in *Morales*[4] (*id*. at pp. 383-384), he emphasizes the *Morales* court's conclusion that the obligations imposed by the state fare advertising guidelines in question "would have a

---

[4] As plaintiff points out, *Morales* refers to "rates" instead of "price" because this was the preemption clause language prior to 1994; however this change in terms was not a substantive change. (*Wolens*, *supra*, 513 U.S. at p. 222, fn. 1.)

*significant* impact upon the airlines' ability to market their product, and hence a *significant* impact upon the fares they charge." (*Id.* at p. 390, italics added.) He argues that these references indicate "it is still necessary to prove that the state law sought to be preempted has a significant impact on price, routes, or service."

As plaintiff also points out, the *Morales* court stated that its preemption ruling did not "set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines," acknowledged, after referring to "nonprice aspects of fare advertising," that " '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have a pre-emptive effect," and stated that its decision did not give airlines "*carte blanche* to lie to and deceive consumers" because of certain federal protections. (*Morales*, *supra*, 504 U.S. at p. 390.) Thus, the *Morales* court recognized, without precisely defining, a "border" to preemption.

Plaintiff insists that his claims are beyond that border. He asserts that defendant is "taking 'tax' money from exempt passengers without a legal justification to do so" and keeps the money, and plaintiff further asserts that, "[w]hile maybe not prostitution or gambling, this type of lying or deceit is quasi-, or perhaps actually, criminal, patently immoral, and definitely unethical."

Defendant's argument is unpersuasive because it ignores a number of things. First, regardless of his contentions of the morality of defendant's conduct, his first amended complaint causes of actions are simply for breach of contract and money had and received. He fails to establish that his contentions in his appellate briefing about deceit and the like have any relevance to these causes of action.

Second, and most importantly, his essential contention is that defendant charges exempt passengers an approximately $22 Mexican tourism tax in breach of contract. As defendant points out, federal courts have held that such a charge is directly "related to" the "price" of the ticket and, therefore, a state law claim based on such a charge is preempted by the ADA.

Specifically, as defendant points out, in *Buck v. American Airlines, Inc.* (1st Cir. 2007) 476 F.3d 29 (*Buck*), purchasers of nonrefundable airline tickets that they ultimately

13

were unable to use sued certain airlines, not for refund of the base fares, but for "unlawfully failing to refund various fees and taxes that had been collected as part of the original ticket prices." (*Id*. at p. 31.) These included passenger facility charges, customs, immigration, agricultural quarantine, and security fees, and charges on behalf of foreign sovereigns. (*Id*. at pp. 31-32.) The plaintiffs alleged the airlines violated numerous federal regulations and brought numerous causes of action, including for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (*Id*. at p. 32.)

The *Buck* court rejected the plaintiffs' argument that their suit did not actually affect "prices" because "*taxes, fees, and charges* imposed by the Government or other fee-levying authorities" were a separate component from the fare price of the ticket. (*Buck*, *supra*, 476 F.3d at p. 35.)[5] In rejecting this contention, the court stated:

"This dichotomy blurs when contextualized within the contours of the 'significant effect' doctrine. Although the fees are in one sense separate from the base fare, the two are inextricably intertwined. In all events, an air traveler's concern is with the overall cost of his or her ticket. Thus, when an airline establishes the base fare, it must take cognizance of any surcharges that will be imposed by operation of law.

"It is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers. For that reason, an airline must account for the fees when setting its own rates. It follows that a finding for the plaintiffs in this case would impact base fares[.]" (*Buck*, *supra*, 476 F.3d at pp. 35-36.)

This reasoning was adopted by the Ninth Circuit in *Sanchez*, *supra*, 590 F.3d 1027. Sanchez, having purchased a ticket to fly on Aeromexico from California to Mexico that included a Mexican tourism tax of $22, filed a class action complaint (represented by the same law firm that represents plaintiff in the present case) against Aeromexico. (*Id*. at p. 1028.) As a Mexican citizen, Sanchez was exempt from the tax.

---

[5] The *Buck* court also held that the ADA preempted all of the plaintiffs' claims. (*Buck*, *supra*, 476 F.3d at p. 35.)

(*Ibid*.) She alleged breach of contract and the implied covenant of good faith and fair dealing, unjust enrichment, and money had and received. (*Ibid*.) After removal to federal court, Aeromexico moved for summary judgment, which was granted, and Sanchez appealed. (*Id*. at pp. 1028-1029.)

Sanchez argued, based on language on Aeromexico's website, that she and Aeromexico entered into a contract whereby Aeromexico became obliged not to collect a tax that was not due from exempt passengers. (*Sanchez*, *supra*, 590 F.3d at p. 1029.) Sanchez argued that the ADA preemption clause did not purport to prevent the states from enforcing contracts between airlines and their passengers, and asserted, similar to the plaintiffs in *Buck*, that the Mexican tourism tax was "a fee separate and apart from the fare for air transportation that has no economic effect on 'price.' " (*Sanchez*, at p. 1029.) The appellate court rejected this "separate fee" argument, stating "we see no need to dwell on whether Sanchez's claims relate to the air carrier's 'price.' The ticketed price included the tourism tax and other fees and surcharges. As the First Circuit reasoned in a case raising similar issues, '[i]t is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers.' " (*Id*. at p. 1030, quoting *Buck*, *supra*, 476 F.3d at p. 36.)

In his reply brief, plaintiff attempts to distinguish his case from the reasoning in *Buck* by arguing that the $22 tax collected from exempt passengers was not a tax because Mexico does not charge it to those classes of passengers who are not deemed tourists under the law and, he contends, Mexico does not receive any of this money. Plaintiff concludes, "[t]he money collected is neither seen as a tax by Mexico nor treated as a tax collection by [defendant]." Some of plaintiff's contentions, such as whether Mexico receives any of the money or how the money collected is viewed by Mexico and defendant, go beyond the allegations of his first amended complaint and should be disregarded. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 (*City of Atascadero*) ["[a] demurrer tests the pleading alone, and

15

not the evidence or the facts alleged"].)[6] In any event, he grossly oversimplifies the circumstances that are apparent from his first amended complaint allegations. That is, according to plaintiff's allegations, defendant collects a tourism tax imposed by the Mexican government from passengers, including from those who may or may not be exempt from this tax, although in some cases it does not collect the tax from exempt passengers. Defendant does *not* allege that defendant has a duty to determine a passenger's Mexico resident status in the course of the sales transaction, other than by a purportedly self-imposed contractual obligation. Plaintiff's arguments do not establish why as a matter of law this transaction is or should be exempted from ADA preemption analysis.

We agree with the reasoning of *Buck* and *Sanchez* and conclude that the Mexican tourism tax directly "relates to" "price," and therefore is subject to federal ADA preemption unless plaintiff can establish that his claims survive under a *Wolens* exception.

## 2. *Plaintiff's "Wolens Exception" Claim*

Plaintiff next claims that defendant's ICC "is exactly the type of self-imposed obligation mentioned in *Wolens* that should be subject to state contract law and not preempted by the ADA." He asks this court to conduct a "de novo review of the contract's terms and conditions as well as the reasonable interpretations set forth in the complaint: that [defendant] promised to charge a reasonable ticket price and any added taxes must be legally 'collectible.' " We have conducted this review, and conclude that defendant did not assume any contractual obligation regarding the Mexican tourism tax.

---

[6] Plaintiff also refers to a declaration submitted by defendant representative Kevin Thiel contained in the record regarding defendant's efforts to remove the case to federal court. The trial court acknowledged the declaration in its ruling, indicated it was not a part of plaintiff's pleadings, and found it was not helpful to plaintiff in any event. He also refers elsewhere in his reply brief to a declaration by defendant representative Steve Jarvis that was also a part of these removal efforts. Because these declarations were not a part of plaintiff's pleadings and plaintiff does not establish that the trial court took judicial notice of them in considering the demurrer below, we disregard them, and plaintiff's related contentions. (*City of Atascadero*, *supra*, 68 Cal.App.4th at p. 459.)

16

Therefore, plaintiff has not established that his first amended complaint claims qualify for a *Wolens* exception to ADA preemption.

At the heart of plaintiff's *Wolens* exception argument is his reliance on Rule 40AS of the ICC.[7]  Again, this provision states:

" 'Any tax or other charge imposed by government authority and collectable from a passenger will be in addition to the published fares and charges.' "

According to plaintiff, it is reasonable to interpret this provision as pled in his first amended complaint, that being:  "Defendant airlines promised plaintiff and other class members that defendant only charges applicable taxes imposed by governmental authorities it is required to charge from passengers who owe the taxes."  Therefore, he argues, we should reverse the trial court's ruling.

Defendant argues that we must accept his interpretation of Rule 40AS if that provision is "reasonably susceptible" to it, citing *Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232.  Defendant is correct that *Aragon-Haas* states that when a complaint is based on a contract which is set out in full in the complaint, a general demurrer must admit the contents of the instrument and any pleaded meaning to which it is "reasonably susceptible." (*Id*. at p. 239.)  However, *Aragon-Haas,* as plaintiff acknowledges, involved an *ambiguous* employment contract.  The court stated, " '[W]here an ambiguous contract is the basis of an action, it is proper . . . for a plaintiff to allege its own construction of the agreement.  So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.' " (*Id*. at p. 239.)  "Whether a contract is ambiguous is a question of law." (*Ibid*.)

We conclude that Rule 40AS is not ambiguous.  It contains no language that is reasonably susceptible to the meaning that plaintiff has ascribed to it.  We agree with the

---

[7]  Defendant makes further arguments based on the documents for which he requested judicial notice.  As we have indicated, we have disregarded these arguments because we denied his request for judicial notice.

trial court's determination that it "describes a mere notice that the published fares and charges do not include taxes that are imposed by governmental authorities and collectible from passengers. It says nothing more. For example, it says nothing about what will be charged to the passengers; indeed it says nothing about [defendant's] obligations at all."

Our conclusion is consistent with the conclusions reached by the *Sanchez* and *McMullen I* courts. The *Sanchez* court also rejected the contention that Sanchez's claims did not qualify under the *Wolens* exception. The court concluded that the contractual language relied on by Sanchez[8] did not amount to Aeromexico making a contractual commitment to advise passengers about the Mexican tourism tax, not to collect it from exempt passengers, and to refund that portion of the price attributable to the tax. (*Sanchez*, *supra*, 590 F.3d at p. 1030.) Instead, the court found that the website "creates no duty on the party of Aeromexico to advise Sanchez of her rights" regarding any of these matters. (*Ibid*.)

Similarly, in *McMullen I*, *supra*, U.S. Dist. LEXIS 75720, the court granted Delta Airlines' motion to dismiss against a similar claim by McMullen that he and others were exempt from the Mexican tourism tax.[9] Among other things, the court rejected the argument that Delta had taken on a self-imposed undertaking based on certain contractual provisions in Delta's ICC.[10] (*Id.* at p. *9.) The *McMullen I* court concluded, after

---

[8] The language relied on was: "The user hereby accepts to be bound by the terms and conditions of purchase imposed by Aeromexico including, but not limited to, the payment of all amounts when they fall due and the compliance of all rules regarding the availability of tickets, products and services. The user shall remain fully liable for all evaluations, charges, rights, quotas and taxes arising from the use of the Site." (*Sanchez*, *supra*, 590 F.3d at p. 1029.)

[9] The court referred to the tax as the "Mexican Non-Immigrant Tax" (*McMullen I*, *supra*, U.S. Dist. LEXIS 75720 at p. *1), but also indicated that it was the same tax as that involved in *Sanchez*. (*McMullen I*, at p. *12.)

[10] That language was:

"RULE 1 - GENERAL PROVISIONS

"C. Application of International Conditions of Carriage

"4. Overriding Law

18

reviewing these provisions, that "Delta did not undertake to only charge non-exempt passengers, but merely promised to comply with applicable laws, regulations, and orders that are in conflict with the [ICC]." (*Id.* at pp. *11-*12.)[11]

Plaintiff argues that *Sanchez* does not provide support for sustaining his demurrer because the airline contract examined in *Sanchez* was "more spare" than Rule 40AS. He argues that the *Sanchez* court found that the clause in question there "only spoke to the passenger's obligation and said nothing about the airline's obligation under the contract." He contends that Rule 40AS, on the other hand, "relates specifically to taxes and speaks about their governmental imposition and collectability. Here, as contemplated by the contract language there is a government (Mexico) that imposes a tax and also a standard by which the tax might be collectible or not (tax-exempt status). It goes too far to expect that such a contract would ever list every possible tax. And the need for such specificity would, if it led to federal preemption, in fact give airlines complete immunity from charging fraudulent or even made-up taxes. Such a result could not have been intended by Congress, as it would certainly not lead toward market efficiency and thus lower prices for passengers." In his reply brief, plaintiff further contends that "[a]pplying

---

"These Conditions of Carriage are applicable except to the extent that they are contrary to applicable laws, governmental regulations, or orders, in which event the contrary law, regulation, or order shall prevail. If any provision of these Conditions of Carriage in invalid under any applicable law, the other provisions shall remain valid.

"RULE 55 - LIABILITY OF CARRIERS

"E. Overriding Law - Insofar as any provision contained or referred to in the ticket or in this tariff may be contrary to a law, government regulation, order or requirement which severally cannot be waived by agreement of the parties, such provisions shall remain applicable and be considered as part of the contract of carriage to the extent only that such provision is not contrary thereto. The invalidity of any provision shall not affect any other part." (*McMullen I*, *supra*, U.S. Dist. LEXIS 75720 at p. *9.)

[11] *McMullen I* was affirmed by the Ninth Circuit in an unpublished opinion, *McMullen II*, *supra*, 361 Fed. Appx. 757, on the grounds that, whether or not ADA preemption applied, plaintiff did not "refer to any contractual language that obligates Delta not to collect the Mexican tax from all passengers to Mexico, regardless of whether they are exempt from the tax," and because McMullen never requested a refund as provided for in the subject ICC. (*McMullen II*, *supra*, 361 Fed. Appx. at p. 758.)

19

simple logic," the terms of Rule 40AS "may fairly be interpreted to prohibit the airline from collecting sums that are neither governmentally imposed nor collectible."

Plaintiff provides no legal authority in support of his contentions, other than the dissent in *Sanchez*. (*Sanchez*, *supra*, 590 F.3d at p. 1032.) The dissent, and plaintiff's argument, is unpersuasive in light of the express, unambiguous language of Rule 40AS, which simply does not state that defendant is obligated to plaintiff as plaintiff alleges.[12]

Plaintiff also summarily repeats his course of performance argument made below, based on the allegation in his first amended complaint that defendant "voluntarily acknowledged its contractual obligation not to collect the Mexican tourism tax from exempt passengers through its course of performance in complying with the [ICC]."[13] However, he does not explain why the court's reasoning was incorrect. We agree with the trial court's reasoning. That is, given that plaintiff did not establish that defendant had a contractual obligation to begin with, he did not establish that defendant's course of performance somehow acknowledged such an obligation.

Finally, plaintiff asks that we also consider certain portions of Rule 45AS of the ICC, as attached to his first amended complaint, regarding, among other things, administrative requirements regarding passports, visas, and tourist cards, including that passengers obtain and present the appropriate documentation necessary for their travels. He contends that defendant is able to learn from these documents which passengers are and are not exempt from the Mexican tourism tax. We do not see the relevance of the provision, however, in the absence of plaintiff establishing that defendant has any contractual obligation to do so.

---

[12] Plaintiff makes additional arguments in this section based on documents attached to his request for judicial notice, which, as we have already indicated, we must disregard in light of our denial of his request.

[13] Plaintiff contends, as he did below, that this allegation is based on the declaration submitted by defendant representative Kevin Thiel contained in the record regarding defendant's efforts to remove the case to federal court. We disregard this declaration because plaintiff does not establish that the superior court took judicial notice of it in ruling on defendant's demurrer. (*City of Atascadero*, *supra*, 68 Cal.App.4th at p. 459 ["[a] demurrer tests the pleading alone, and not the evidence or the facts alleged"].)

20

Also, as defendant points out, plaintiff does not in his opening brief challenge the trial court's determination that the demurrer should be sustained to his second cause of action, for money had and received. As we have discussed, the court did so based on this court's ruling in *McBride v. Boughton*, *supra*, 123 Cal.App.4th 379, that "[w]hen a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable." (*Id*. at p. 394.) We agree with defendant that plaintiff's failure to contest this ruling is a waiver of any appellate claim regarding this cause of action. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

In short, we conclude that the trial court properly sustained defendant's demurrer to plaintiff's first amended complaint because his causes of action are preempted by the ADA. Given our conclusion, we need not, and do not, address defendant's further argument that plaintiff waived any appellate claim regarding the trial court's "alternative" ground for sustaining the demurrer to plaintiff's breach of contract cause of action by failing to address it; that is, the court also ruled that he did not allege facts sufficient to support the conclusion that defendant agreed not to collect the Mexican tourism tax.

**II.** ***Plaintiff's Claim Regarding His Proposed Second Amended Complaint***

Plaintiff also argues the trial court erred when it denied his motion for leave to file a second amended complaint with a new cause of action for breach of the implied promise to act in good faith and deal fairly with passengers. Plaintiff contends that this cause of action should have been allowed pursuant to a Ninth Circuit case issued after this matter was remanded to the trial court, *Ginsberg v. Northwest, Inc.* (9th Cir. 2012) 695 F.3d 873, regarding which the Supreme Court has recently granted a writ of certiorari in *Northwest*, *Inc. v. Ginsberg* (May 20, 2013) ___U.S.___ [185 L.Ed.2d 1103].

Defendant argues that plaintiff has waived his appellate claim to two of the three grounds relied on by the trial court to deny plaintiff's motion, and is also incorrect on the

merits. We agree with defendant that plaintiff has waived two of these grounds. Therefore, we affirm the trial court's ruling.

As we have discussed, after our dismissal without prejudice of plaintiff's first appeal in case No. 130467, plaintiff moved the trial court to grant leave to file a second amended complaint. The trial court denied plaintiff leave to do so on three grounds. Specifically, it ruled that plaintiff did not have standing to bring his motion because all of his individual causes of action had previously been dismissed as the result of the court's granting of defendant's demurrer to plaintiff's first amended complaint. Second, plaintiff had failed to amend that complaint within the deadline given to him by the court and, therefore, had "forfeited any right to take advantage of further leave to amend which was circumscribed by this court," based on *Leader vs. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603 (*Leader*). Third, plaintiff's amendment would be futile because his proposed new cause of action, for breach of the covenant of good faith and fair dealing, "would be preempted by the ADA for the same reasons this court previously ruled that its breach of contract and money had in receipt [*sic*] claims were preempted."

In his opening brief, plaintiff does not address at all the trial court's determination that he lacked standing to move for leave to file a second amended complaint. We agree with defendant that plaintiff has waived this claim as a result. *People v. Stanley*, *supra*, 10 Cal.4th at p. 793.) For this reason alone, we must reject plaintiff's appellate claim.

Furthermore, plaintiff does not address the trial court's determination that he had forfeited his right to further amend by not seeking to do so within the time allowed by the court based on *Leader*, *supra*, 89 Cal.App.4th 603, in which the court stated that the plaintiffs' "failure to file an amended complaint within the time specified subjected their entire action to dismissal in the court's discretion under [Code of Civil Procedure] section 581, subdivision (f)(2)." (*Leader*, at p. 613.) This is a separate, independent ground for rejecting plaintiff's appellate claim.

Instead, almost all of plaintiff's argument in his opening brief relates to the trial court's determination that the proposed amendment was futile. In a footnote (which defendant does not address), plaintiff states that the trial court "also ruled that the [second

22

amended complaint] could not be filed because [plaintiff] had not timely amended the [first amended complaint]." However, rather than address the two independent reasons for the court's ruling, plaintiff asserts that, "[i]n light of the trial court's earlier holding that the case was preempted by the ADA, there was no way to amend the complaint successfully," and that to allow the trial court's "reasoning on remand . . . to stand" "would absolutely deny [plaintiff] his right to challenge the underlying preemption ruling." Plaintiff also cites three cases (see *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, 797-798, *Desny v. Wilder* (1956) 46 Cal.2d 715, 751, and *Redevelopment Agency v. Herrold* (1978) 86 Cal.App.3d 1024, 1032), as well as Code of Civil Procedure section 426.50, to argue that courts generally should be liberal in allowing amendments to pleadings for a plaintiff who remains a party to an action. Plaintiff makes a few other contentions in his reply brief, but not legal arguments regarding the trial court's rulings.

None of plaintiff's legal arguments address the court's specific rulings regarding plaintiff's standing and the untimely nature of his motion as considered pursuant to Code of Civil Procedure section 581, subdivision (f)(2), nor are any of them more than summary in nature. Such conclusory arguments are not sufficient to avoid waiver. "An appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument" (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873), including when "the relevance of the cited authority is not discussed or points are argued in conclusionary form." (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

Accordingly, we find plaintiff has waived his appellate claim that the trial court erred in not allowing him leave to file his second amended complaint. In light of our ruling, we do not address plaintiff's argument that the court was wrong to find his amendment would be futile.

### III. *Plaintiff's Claim Regarding the Trial Court's Stay of Discovery*

Finally, plaintiff argues the trial court erred when it twice denied plaintiff's request to lift the court's stay of discovery. We find no error by the trial court.

**A.** *Relevant Proceedings Below*

As we have discussed, in March 2009, plaintiff served defendant with interrogatories and document requests. Later that same month, the superior court stayed all discovery pending the outcome of certain Ninth Circuit cases, including *Sanchez* and *McMullen II*.

**1.** *Plaintiff's April 2010 Request*

In April 2010, after defendant demurred to his original complaint, plaintiff requested that the discovery stay be lifted regarding three special interrogatories and eleven requests for production of documents from the larger sets of discovery originally served on defendant in March 2009. According to plaintiff, his discovery sought additional facts allowing him to allege his breach of contract action with greater specificity against defendant. He further contended that the information requested was "crucial and necessary because it goes directly to defendant's making and performing its self-imposed contractual undertaking as to plaintiff and the other passengers in this case."

Defendant argued that the stay should not be lifted until the court ruled regarding defendant's ADA preemption argument on the basis of the pleadings. The requested discovery was not relevant to the demurrer issues because it would "not enable [plaintiff] to allege the terms and conditions of a contract that is not subject to [defendant's] preemption defense," since the discovery focused instead on allegations of breach, and was not intended to ascertain the terms and conditions of the contract itself.

The trial court denied plaintiff's request, ruling that "there has been a failure by him to show a single particularized need for any of the information being sought. Plaintiff Nelson has failed to allege that [defendant] breached any contract that it made with him, and the proposed discovery is not reasonably designed to show that [defendant] made any other or different contract with him than that alleged in the complaint. Thus, the requested discovery would only be an unnecessary and unduly burdensome additional expense to [defendant]. Even if one could fathom that any of plaintiff's proposed discovery requests conceivably could include some bit of information relevant to the contract between plaintiff Nelson and [defendant], there has been no particularized

24

showing of what that information would be or that any of the discovery requests is tailored in any reasonably narrow or circumscribed manner to obtain that bit of information." The court ruled, based on *Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 246-248 (*Terminals Equipment Co.*), that it had the discretion to deny the requested discovery, and did so.

### 2. *Plaintiff's August 2010 Request*

In August 2010, after defendant demurred to his first amended complaint, plaintiff again requested that the discovery stay be lifted regarding the same three special interrogatories and 11 requests for production of documents. Plaintiff's moving papers stated that he sought "additional facts allowing plaintiff to allege his breach of contract action in connection with [defendant's] course of performance in collecting the Mexican tourism tax with greater specificity against [defendant]." Specifically, the discovery concentrated on "[defendant's] process of assessing and collecting the Mexican tourism tax from its passengers."

Once more, defendant argued that the stay should not be lifted until the court ruled regarding defendant's ADA preemption argument on the basis of the pleadings, because "plaintiff's requested discovery will not enable him to allege the terms and conditions of a contract that is not subject to [defendant's] preemption defense," since the discovery was focused on allegations of breach, and not to ascertain the terms and conditions of the contract itself.

The trial court once more denied plaintiff's request, for much the same reasons and based on the same legal authority as that stated in its previous denial.

### B. *Analysis*

Generally, " '[m]anagement of discovery lies within the sound discretion of the trial court. Consequently, appellate review of discovery rulings is governed by the abuse of discretion standard. [Citation.] Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court. [Citation.]' [Citation.] The trial court's determination will be set aside only when it has been established that there was no legal justification for the order granting or

25

denying the discovery in question." (*Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235, 245-246.)

According to plaintiff, the trial court erred in requiring that he make a "particularized showing" of what information he needed that was relevant to the claim he was asserting because the court "wanted plaintiffs to show what they had found before they had a chance to look." He asserts the information was relevant to discover if defendant had breached its contract, and it was outside the bounds of reason for the court to deny the discovery requested.

Plaintiff further asserts that the facts and documents that were sought "may have been necessary . . . to overcome the demurrer." He cites four appellate court opinions and a treatise to argue in effect that the trial court was required to lift discovery if the information sought was material to any issue raised by his allegations, regardless of any purported pleading deficits.

However, as defendant points out, the four cases cited by plaintiff are inapposite in light of the fact that plaintiff's discovery requests did not relate to the issue of defendant's demurrers, i.e., whether the language of the contract itself as pled in the complaint was sufficient to survive demurrer (whether because of ADA preemption or failure to allege a breach of contract claim), a question of law for the court to determine. None of the cases cited by plaintiff involved circumstances where the sought-after discovery was not related to the issue of pending demurrers. In *Credit Managers Assn. v. Superior Court* (1975) 51 Cal.App.3d 352, the first case cited by plaintiff, the appellate court ruled that the trial court had abused its discretion in denying discovery because it was relevant to the grounds of the demurrer just sustained, and the facts sought were within the defendant's, and not the plaintiff's knowledge. (*Id*. at pp. 354, 356, 361-362.)

In *Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, the court, in determining that a party was not justified in refusing to comply with a court order to produce documents during a pending demurrer, remarked that the trial court properly rejected the argument that discovery was premature because "[p]leading deficiencies generally do not affect either party's right to conduct discovery, [citation]

26

and this right . . . is particularly important to a plaintiff in need of discovery to amend its complaint." (*Id*. at p. 1436, fn. 3.)

In *Budget Finance Plan v. Superior Court*, *supra*, 34 Cal.App.3d 794, the court, after granting a demurrer with leave to amend in a putative class action, allowed interrogatories where the plaintiffs sought to find additional plaintiffs who had been defrauded by certain parties, since the named plaintiffs were not injured by those parties. (*Id*. at pp. 796, 799.)

*Union Mut. Life Ins. Co. v. Superior Court* (1978) 80 Cal.App.3d 1 involved whether or not, after the defendant had answered, the plaintiff was entitled to discovery regarding facts that could lead to amendment of the complaint to allege a class action. (*Id*. at pp. 10-12.) The case did not involve whether or not a court could stay discovery pending any demurrer.

Thus, none of these cases establish that the trial court abused its discretion in the present case when it denied plaintiff's requests to lift the stay of discovery. On the other hand, the case cited by the trial court and relied on by defendant in this appeal, *Terminals Equipment Co.*, *supra*, 221 Cal.App.3d 234, provides legal support for the trial court's decision. There, the trial court, upon sustaining a demurrers with leave to amend to the plaintiffs' complaint for failure to state facts constituting a cause of action, ordered a stay of further discovery until the plaintiffs filed an amended complaint that could withstand demurrer. (*Id*. at pp. 238, 246.) The appellate court found no error in the court decision to stay discovery because the plaintiffs had "failed to identify a single particularized need for the documents at issue here," in part because the documents sought could not possibly support or affect the plaintiffs' failure to state a viable cause of action. (*Id*. at p. 247.) In short, the court concluded, "if [the plaintiffs] were unable to state a viable cause of action on the basis of the facts already available to them, nothing in these disputed documents could do anything to change that." (*Ibid*.) Under such circumstances, "discovery of these documents would only be an unnecessary and burdensome additional expense to [the defendants], and there was no abuse of discretion in staying discovery." (*Ibid*.)

The holding and reasoning of *Terminals Equipment Co.* is directly applicable to the present case. The record indicates that defendant's demurrers raised questions of law to be determined from the language of the contract as pled in the complaint. The court correctly determined that plaintiff's discovery was not directed at these issues and, in its discretion, stayed discovery pending their determination. Defendant fails to show this was an abuse of discretion and *Terminals Equipment Co.* indicates that it was not. We so conclude.

## DISPOSITION

The judgment is affirmed. Defendant is awarded costs of appeal.


_____
Lambden, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.