**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA SANCHEZ, individually and
on behalf of all others similarly
situated,

*Plaintiff-Appellant,*

v.

AEROVIAS DE MEXICO, S.A. DE
C.V., doing business as
Aeromexico,

*Defendant-Appellee.*

No. 08-55588

D.C. No.
2:07-cv-07280-
R-RC

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
May 5, 2009—Pasadena, California

Filed January 5, 2010

Before: Pamela Ann Rymer, Andrew J. Kleinfeld and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Rymer;
Dissent by Judge Kleinfeld

## COUNSEL

H. Rossbacher, The Rossbacher Firm, Los Angeles, California, for the petitioner-appellant.

Frank A. Silane, Condon & Forsyth LLP, Los Angeles, California, for the respondent-appellee.

---

**OPINION**

RYMER, Circuit Judge:

When Maria Sanchez bought a ticket to fly from California to Mexico, the airline collected a tourism tax for the Mexican government from which she, and the class she would like to represent, are exempt. She seeks relief for breach of contract and the implied covenant of good faith and fair dealing, as well as for unjust enrichment and money had and received from Aerovias De Mexico S.A. De C.V., better known as Aeromexico. The district court concluded that these claims are preempted by the Airline Deregulation Act of 1978 (ADA) because they relate to the airline's "price[s], route[s], or service[s]," 49 U.S.C. § 41713(b)(1), and are not excepted because Aeromexico had no contractual obligation to advise passengers about the tax or their right to a refund. Accordingly, it granted judgment for Aeromexico. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

I

The government of Mexico levies a tourism tax (sometimes called the UK Tax, or DNI, after the Spanish-language abbreviation) on airline passengers traveling into Mexico on international flights. Passengers who are Mexican citizens or residents of Mexico (holding an FM-2 or FM-3 visa), as well as diplomats, children under the age of two, and those staying in Mexico for less than twenty-four hours, are exempt. The tax fluctuates with the rate of exchange, but is approximately $22 per person.

Aeromexico is an airline operator organized under the laws

of Mexico that is authorized to collect the tax from its passengers on behalf of Mexico. It includes the tax in the price of tickets purchased in California for transportation to Mexico. On July 25, 2006, Sanchez, who is a citizen and resident of California, bought a roundtrip e-ticket from Aeromexico for travel between Los Angeles and Guadalajara, Mexico. The price was $428.43, of which $22.00 was attributable to the tourism tax. Sanchez also is a Mexican citizen, which makes her exempt from the tax.[1]

She filed a complaint in state court on behalf of herself and a class of other passengers who paid the tourism tax as part of the price of an Aeromexico ticket but were exempt. In it she claims that Aeromexico breached contractual obligations by improperly collecting the tax, and by failing to disclose that the tourism tax was not due from exempt passengers and that exempt passengers are entitled to a refund. Sanchez does not aver that she identified herself as a Mexican citizen, either when she purchased the ticket or checked in, or that she asked Aeromexico to refund the tax.

Aeromexico removed the action to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), then moved to dismiss or alternatively, for summary judgment. Sanchez sought a continuance for discovery pursuant to Federal Rule of Civil Procedure 56(f), but the court granted summary judgment without ruling on the application.

---

[1]Sanchez's dual-citizenship poses no jurisdictional problem. Generally, "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994). However, "[d]ual citizenship (even when established) does not defeat jurisdiction." *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992). "[O]nly the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980) (cited in *Mutuelles Unies*, 957 F.2d at 711).

Sanchez timely appealed.[2]

## II

**[1]** We first decide whether the summary judgment must be reversed on account of the district court's failure to take Sanchez's Rule 56(f) application, or evidentiary objections, into account. We agree with Sanchez that neither should have been left hanging, but we disagree that reversal is required. The error, if any, is harmless. Sanchez wanted to depose Aeromexico's Comptroller, who submitted a declaration about how the tourism tax is collected, and to gather evidence about the airline's collection and remittance practices as well as the passenger information it obtains. However, the procedures described in the Comptroller's declaration were undisputed so objections to it are immaterial; and discovery into the merits was not necessary to oppose Aeromexico's motion that it is entitled to judgment as a matter of law.

## III

**[2]** Sanchez's principal argument is that no federal law preempts her state law claims based on breach of contract. She posits that by purchasing a ticket, she and Aeromexico entered into a contract whereby Aeromexico became obliged not to collect a tax that was not due from exempt passengers. This is based on language on Aeromexico's website that states:

> The user hereby accepts to be bound by the terms and conditions of purchase imposed by AeroMexico including, but not limited to, the payment of all amounts when they fall due and the compliance of all rules regarding the availability of tickets, products and services. The user shall remain fully liable

---

[2]Aeromexico's position on appeal is supported by the brief of amicus curiae International Air Transport Association.

for all evaluations, charges, rights, quotas and taxes arising from the use of the Site.

Sanchez recognizes that the ADA has a preemption clause, but maintains that it does not purport to prevent the states from enforcing contracts between airlines and their passengers. The preemption clause in the Airline Deregulation Act of 1978[3] provides that a "State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). In Sanchez's view, her claims do not equate to state regulation of the "price, route, or service of an air carrier" because the tax is a fee separate and apart from the fare for air transportation that has no economic effect on "price."

When interpreting a preemption clause, we "must give effect to [its] plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). Interpretation "does not occur in a contextual vacuum," but rather is informed by two presumptions: first, "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action"; and second "the purpose of Congress is the ultimate touchstone in every preemption case." *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quotation marks omitted); *see also Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1264-65 (9th Cir. 1998) (en banc).

---

[3]The ADA, originally located at 49 App. U.S.C. § 1301, *et seq.* was recodified in 1994 at 49 U.S.C. § 40120, *et seq.* and renamed the Federal Aviation Authority Authorization Act. We continue to refer to it as the ADA. As originally enacted, the preemption clause applied to an air carrier's "rates, routes, or services," but Congress indicated that it intended the change from "rates" to "prices" to have no substantive impact. *See* H.R. Rep. No. 103-677, at 83 (1994) (Conf. Rep.), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1755.

**[3]** The Supreme Court has addressed ADA preemption a number of times, most notably in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); and *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. ___, 128 S. Ct. 989 (2008). From these cases we know that Congress enacted the ADA to deregulate domestic air transport, and included the preemption clause "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales,* 504 U.S. at 378. Also, the ADA "was designed to promote maximum reliance on competitive market forces." *Wolens*, 513 U.S. at 230 (quotation marks omitted); 49 U.S.C. § 40101(a)(6).

**[4]** In *Morales*, the Court construed the text "related to" as plainly meaning " 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with.' " 504 U.S. at 383 (quoting *Black's Law Dictionary* 1158 (5th ed.1979)). "Related to" therefore "express[es] a broad pre-emptive purpose." *Id*. Thus, a state law or enforcement action is "related to" a "price, route, or service" if it "has a connection with or reference to" a "price, route, or service," *see id*. at 384-88 (citing *Shaw*, 463 U.S. at 97). At the same time, even if a claim does relate to "price," the ADA preemption clause does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228. In *Wolens*, the Court focused on the rest of the text — "enact or enforce any law" — in the context of a challenge to the airline's retroactive changes in the terms and conditions of its frequent flyer program. Although the plaintiffs' claims there did relate to "rates" and "services," it held that the preemptive scope of the ADA, as explicated in *Morales*, allows for court enforcement of privately-ordered contract terms set by the parties themselves. *Id*. at 226-33.

**[5]** As in *Wolens*, we see no need to dwell on whether Sanchez's claims relate to the air carrier's "price." The ticketed

price included the tourism tax and other fees and surcharges. As the First Circuit reasoned in a case raising similar issues, "[i]t is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36 (1st Cir. 2007).

**[6]** The real question here is whether Aeromexico made a contractual commitment to advise passengers about the Mexico tourism tax, not to collect it from exempt passengers, and to refund that portion of the price attributable to the tax. If it did, Sanchez's claim could proceed under *Wolens*. To show that Areomexico undertook to do these things, Sanchez points only to the language on Aeromexico's website. That language cannot reasonably be read as imposing any such obligation on Aeromexico, for it has to do with the *user*'s obligation to pay all amounts when they fall due; it says nothing about *Aeromexico*'s obligations. In particular, the website creates no duty on the part of Aeromexico to advise Sanchez of her rights with respect to the payment or non-payment of the Mexican tourism tax under Mexican law or her rights to a refund of the tax, or to collect the tax only from non-exempt passengers.

**[7]** There being no contractual obligation to advise passengers about Mexico's tourism tax, or not to collect it from those who are exempt, or to refund it to exempt passengers from whom it was nevertheless collected, Sanchez's claims against Aeromexico may not proceed. Sanchez makes no discrete argument with respect to her claims for breach of the implied covenant, unjust enrichment, or money had and received, treating them all as stemming from her claim for breach of contract. As no viable claim is stated on this theory, the action was properly dismissed.

AFFIRMED.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent. In my view, Sanchez's claim is not preempted, so we should reverse.

The error in the majority's result derives from its error in concluding that "the ticketed price included the tourism tax." It did not. As the majority apparently concedes, Sanchez's contract included the website language, "the user shall remain fully liable for all . . . taxes . . . ."[1] That means taxes attributable to her flight.

The airline collected a $22 tax from every passenger bound for Mexico, but it is undisputed that Mexico imposes this tax only on non-Mexicans, not Mexicans. Sanchez is a Mexican citizen, so Mexico does not impose the $22 tax on her trips to Mexico. The entire class she wishes to represent is exempt from the tax, so significant money is at stake. The airline collected the $22 as part of the $428.43 it charged to her credit card. It did not refund it to her and has no system for doing so. The record does not reveal whether the airline gave the $22 to the Mexican government, which was not entitled to it, or kept it for itself despite taking it under the premise of a tax collected on behalf of the Mexican government. The implication of the airline's argument appears to be that it gave the $22 to the Mexican government. Sanchez sued for breach of contract and restitution.

The statute preempts state law claims "related to a price,

---

[1] Here is the contractual language from AeroMexico's website that we construe:

> The user hereby accepts to be bound by the terms and conditions of purchase imposed by AeroMexico including, but not limited to, the payment of all amounts when they fall due and the compliance of all rules regarding the availability of tickets, products and services. The user shall remain fully liable for all evaluations, charges, rights, quotas, and taxes arising from the use of the Site.

route, or service."[2] The Supreme Court held in *American Airlines v. Wolens*[3] that this preemption clause barred a state law claim under a state consumer fraud statute challenging retroactive changes in a frequent flyer program, but that a state law claim for breach of contract would not be preempted. In so doing, it applied its earlier holding in *Morales v. Trans World Airlines*[4] that a comprehensive state scheme for regulating airline advertising of fares was preempted. The Court emphasized in both cases that its holding was consistent with the position that the federal agencies charged with enforcing airline deregulation had taken. In our case, unlike those, the federal agencies have expressed no position.

The state Consumer Fraud Act, preempted in *Wolens*, addressed "unfair methods of competition."[5] Deregulation of restraints on competition lies at the heart of the Airline Deregulation Act. The Court pointed out in *Wolens* that the same sort of state regulation of competitive practices was preempted in *Morales*. The Court explained that the reason why the breach of contract claim was not preempted but the state statutory claim was, was that the state statute "serves as a means to guide and police the marketing practices of the airlines; [it] does not simply give effect to bargains offered by the airlines and accepted by airline customers."[6] The federal statute "could hardly have [been] intended to allow the States to hobble competition."[7] "We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery

---

[2] 49 U.S.C. § 41713(b)(1).

[3] 513 U.S. 219, 228 (1995).

[4] 504 U.S. 374, 391 (1992).

[5] *Wolens*, 513 U.S. at 227.

[6] *Id.* at 228.

[7] *Id.* (quoting the petitioner's brief).

solely for the airline's alleged breach of its own self-imposed undertakings."[8]

Applying the *Wolens* language, our task is to distinguish between a state-imposed obligation and one that the airline imposed on itself by making an offer that a customer accepted. Sanchez's case is the latter sort. The airline offered to fly her to Mexico and back for a stated fare plus taxes. She agreed. Yet the airline charged her more than that. Though it called the $22 a charge for taxes, it was not. She did not owe the tax, and the airline did not owe the tax. This was no more a legitimate charge for taxes than it would be for a store in Fairbanks, Alaska (where there is no sales tax) to charge a tourist the price of her souvenir plus 8.5% sales tax.

The airline's answer to this is not that Sanchez owed the tax, or that it owed the tax for flying Sanchez. Instead, it argues that it did not inquire so did not know which of its passengers were Mexican citizens, so it charged everybody tax whether they owed it or not. That argument does not address whether it breached its contract. If the deal is "the price is $9.95," and the shop does not give the customers a nickel change from a ten dollar bill, the breach of contract does not somehow disappear because the shopkeeper contends that it would cost him more than a nickel to maintain a cash register, staff, and supply of nickels, to pay customers their change.

In its discussion of economic theory, *Wolens* explains that "maximum reliance of competitive market forces," the point of airline deregulation, "requires effective means to enforce private agreements."[9] The traditional American method for enforcing private agreements that are not kept is to sue the parties that do not keep them. Sanchez is entitled to do that.

---

[8]*Id.*

[9]513 U.S. at 230.

It will not do to claim that anything affecting how much money airlines make affects how much they have to charge to stay in business, so any claim against them is a claim "related to a price." A First Circuit case in a different context suggests that customers care about the bottom line, not the components, so an airline must reduce its fare if governments require it to collect taxes, so refunding the tax portions of nonrefundable tickets would affect fares, so state law breach of contract claims are preempted.[10] That argument, at least as applied to Sanchez's claim, would go too far. In *Wolens* all the justices, including the dissenters, agreed that state law personal injury and wrongful death claims are not preempted,[11] yet airline costs and fares may well be affected by whether state law is restrictive or expansive on tort damages. Ticket prices are undoubtedly affected by whether passengers can sue airlines for breach of contract, yet *Wolens* holds that they can. That implies that a theoretical effect on price does not determine whether a state law claim is preempted. We know from *Wolens* that if the basis of the claim is breach of an undertaking the airline assumed for itself, the claim is not preempted. That, not a consequential impact on what airlines charge, is the test.

In our en banc decision in *Charas v Trans World Airlines*,[12] we held that the Airline Deregulation Act did not preempt personal injury claims, even though the claims related in various ways to the extent and nature of the services provided by flight attendants as adverse judgments might well affect the sort of in-flight services airlines provided. We so held even though the act preempts claims "relating to rates, routes or *service*,"[13] explaining that the purpose of the preemption

[10]*Buck v. American Airlines, Inc.*, 476 F.3d 29, 35-36 (1st Cir. 2007).

[11]*Wolens*, 513 U.S. at 234-35 (majority opinion); *id.* at 235 (Stevens, J., concurring in part and dissenting in part); *id.* at 242-43 (O'Connor, J., concurring in the judgment in part and dissenting in part).

[12]160 F.3d 1259 (9th Cir. 1998) (en banc).

[13]49 U.S.C. app. § 1305(a)(1) (1994) (emphasis added). The preemption clause has since been amended to change "related to rates, routes, or ser-

clause was "to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry."[14] State economic regulation was preempted, but not state law personal injury and breach of contract claims. *Charas* requires us to abjure the more expansive interpretation of the preemption clause that the majority applies. And certainly the recent trend of Supreme Court decisions on federal preemption does not bode well for needlessly expansive interpretations.[15]

About all there is to decide is whether Sanchez's deal was to pay the Mexican tax whether any tax was imposed by Mexico on her trip or not, or to pay whatever tax was owed. To ask the question is to answer it. Her deal was to pay the fare and to "remain liable for all . . . taxes." Were we recklessly indulgent, we might say this is ambiguous, maybe she means to contract to pay whatever taxes there may be on anyone, not just her. And maybe the tourist in Fairbanks wishes to pay the sales taxes that would be due were she buying her souvenir in San Francisco instead of Fairbanks. But probably not. We need not even reach application of the doctrine of construing the contract contra proferentem to resolve ambiguity in Sanchez's favor, because the only sensible construction is that Sanchez agreed to remain liable only for taxes attributable to her. The tourist who hands the $9.95 *objet d'art* to the cashier doubtless assumes, if she is from San Francisco, that it will cost her around $10.80, and may well hand the cashier a $20 bill instead of a $10. But her acceptance of an obligation to pay all taxes in addition to the marked price does not mean that she agrees to pay taxes that the city and state do not

---

vice" to the current "related to a price, route, or service" and moved to 49 U.S.C. § 41713(b). This amendment does not change the meaning of the statute.

[14]*Charas*, 160 F.3d at 1261.

[15]*See, e.g.*, *Wyeth v. Levine*, 129 S.Ct. 1187 (March 4, 2009); *Altria Group v. Good*, 129 S.Ct. 538 (Dec. 15, 2008).

charge and that she does not owe, so long as the shopkeeper calls the extra money "tax." She explicitly agrees to pay $9.95 plus whatever tax is due, and since none is due, she (and Sanchez) is entitled to all her change.

Sanchez was not liable for the Mexican tax, never was, and could not "remain liable" for a tax she never owed. This was a tax on non-Mexicans, she is Mexican, and whether the airline kept her money or made gift of it to the Mexican government (a gift, since the Mexican government did not impose the $22 tax on Sanchez or on the airline for transporting Sanchez), Sanchez's contract was not to pay this tax on people other than herself. Nor does it matter whether the airline provides a procedure for customers to seek refunds of improperly collected taxes. An airline is not like a government agency enjoying a narrowly construed waiver of sovereign immunity. An airline is like the Fairbanks shopkeeper, bound by contract law to charge the customer the marked price plus any tax, and not a higher price in the guise of a tax not due. Sanchez is entitled to sue for breach of contract and restitution of her money under *Morales*, *Wolens*, and *Charas*.