[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-11330

_____

ROBERTO HUNG CAVALIERI,
individually and on behalf of all others similarly situated,
SERGIO ENRIQUE ISEA,

Plaintiffs-Appellants,

*versus*

AVIOR AIRLINES C.A.,
a Venezuelan company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:17-cv-22010-FAM

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Plaintiffs Roberto Hung Cavalieri and Sergio Enrique Isea were passengers on airline flights operated by Defendant Avior Airlines, C.A. They brought this putative class action alleging that Defendant breached its Contract of Carriage by requiring passengers to pay a fee not disclosed in the Contract of Carriage. Passengers had to pay this additional fee, an $80 "Exit Fee," before they were allowed to board their departing flights from Miami to Venezuela. The district court dismissed Plaintiffs' claim, concluding that the Airline Deregulation Act (ADA) preempted Plaintiffs' breach of contract claim because it related to the price of the airline ticket and the ADA's preemption provision identifies actions relating to price as preempted. After careful review, we reverse the district court and remand for further proceedings. Plaintiffs' breach of contract claim seeks merely to enforce the parties' private agreements regarding the cost of passage and does not invoke state laws or regulations to alter the agreed-upon price. Accordingly, this breach of

contract action falls within the category of cases protected from preemption by the Supreme Court's decision in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).

## I.    BACKGROUND

As alleged in Plaintiffs' second amended complaint, Plaintiffs purchased tickets for Defendant's commercial flights from Miami International Airport to Venezuela, entering into a contract with Defendant, the terms of which are reflected in Defendant's Contract of Carriage and the issued tickets. Plaintiff Hung purchased his ticket through Expedia.com for the "contract price of $775.50." The itinerary and receipt attached to the second amended complaint indicated that the price "include[d] taxes [and] fees." Plaintiff Isea purchased his ticket through a travel agent but did not allege the price paid or attach a ticket or receipt to the second amended complaint. Plaintiffs allege that their ticket price reflected the "fully-paid contract" and that Defendant failed to sufficiently disclose any other fees required for passage. However, when checking in for their flights at the airport, Defendant informed Plaintiffs that they had to pay an additional $80 "Exit Fee" before being allowed to board their flights.

Plaintiffs deemed the Exit Fee "extra-contractual" and filed a single-count, breach of contract putative class action against Defendant in the United States District Court for the Southern District of Florida. Plaintiffs contended that by requiring them, and other

ticketed passengers, to pay an additional $80 charge in order to board their ticketed flights, Defendant breached its contracts with Plaintiffs and its other passengers—specifically the price terms set forth on their tickets as authorized by Defendant's Contract of Carriage.

Defendant filed a motion to dismiss Plaintiffs' second amended complaint.[1] Defendant raised at least five grounds for dismissal, including that Plaintiffs failed to state a plausible breach of contract claim. Defendant argued that Plaintiffs failed to disclose the entire contract, which it maintained included terms on its website that permitted charging of the "Exit Fee." Defendant also asserted that the ADA preempted Plaintiffs' breach of contract claim because it constituted an improper attempt to regulate air carrier pricing in contravention of the ADA.

---

[1] The district court granted Plaintiffs' leave to amend following its grant of Defendant's motion to dismiss Plaintiffs' first amended complaint for failure to state a claim, among other reasons. The court concluded that Plaintiffs' first amended complaint failed to allege what contract terms had been breached by Defendant's alleged actions because the Contract of Carriage lacked defined terms regarding the price paid by passengers in exchange for transportation services. Plaintiffs amended their complaint to allege that the contract between passengers and Defendant included the terms in the Contract of Carriage and the ticket validly issued pursuant to the Contract of Carriage.

The magistrate judge issued a report and recommendation ruling only on Defendant's ADA preemption argument. The magistrate judge found Plaintiffs' state law breach of contract claim preempted by the ADA and not excepted under the Supreme Court's decision in *Wolens*. *Wolens* excepted from preemption a breach of contract claim stemming from the terms of a frequent flier program because the allegedly breached terms arose from a self-imposed undertaking, rather than state-imposed obligations. *Wolens*, 513 U.S. at 228–29. The magistrate judge concluded that Plaintiffs' claim was related to prices, routes, and services, which is the province of the Act. Relying on the Ninth Circuit's decision in *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027 (9th Cir. 2010), the magistrate judge further found that *Wolens* did not except Plaintiffs' claim from preemption because Plaintiffs' second amended complaint failed to identify a voluntary contractual undertaking that created an obligation to disclose the Exit Fee. Accordingly, the magistrate judge recommended that Plaintiffs' claim be dismissed with prejudice.

The district court adopted the magistrate judge's report and recommendation. The district court found Plaintiffs' claim alleging breach of contract by Defendant's imposition of additional undisclosed fees preempted by the ADA, and not subject to a *Wolens* exception, "because by its very terms the airline ticket receipt refers to the price of the airline ticket." The district court concluded,

"[u]nlike in *Wolens*, where the Supreme Court excepted the breach of contract stemming from the frequent flier program, the express terms of the violated provision in this case expressly relate to pricing, and the claim is therefore, preempted."  The district court rejected Plaintiffs' argument that the preemption doctrine permits breach of contract actions relating to price when there is no attempt to enforce a state law or regulation to alter the agreed-upon price, as "inconsistent with the Act, which was enacted to foster competition among airlines."  The district court dismissed Plaintiffs' case with prejudice because Plaintiffs were "unable to amend their complaint in a manner that would avoid . . . preemption."

## II.    DISCUSSION

Plaintiffs appeal the district court's dismissal of their second amended complaint, arguing that *Wolens* protects their breach of contract claim from preemption by the Airline Deregulation Act. Defendant maintains that dismissal should be affirmed on preemption grounds, or alternatively, on the ground that Plaintiffs failed to state a plausible breach of contract claim.  First, we discuss whether the parties are diverse citizens sufficient for the purpose of establishing jurisdiction.  Next, we turn to the issue of preemption. Lastly, we address Defendant's argument that Plaintiffs' cause of action was not sufficiently pled.

### A.    Standard of Review

"We review preemption determinations de novo." *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1266 (11th Cir. 2018). We review the district court's ruling on Defendant's motion to dismiss de novo, accepting the allegations in Plaintiffs' second amended complaint as true and construing them in the light most favorable to Plaintiffs. *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1301–02 (11th Cir. 2020). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Plaintiffs Have Sufficiently Alleged Diversity Between the Unnamed Putative Class Members and the Defendants

The parties were asked to discuss whether the Plaintiffs sufficiently alleged minimal diversity for the purpose of establishing jurisdiction. "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). And we review jurisdictional issues de novo. *In re Walker,* 515 F.3d 1204, 1210 (11th Cir. 2008).

Plaintiffs alleged in their second amended complaint that "as a national class at least one class member (as well as the Plaintiffs) belong to a different state than that of the Airline[.]"  Plaintiffs defined their national class as "all persons that Avior charged an Exit Fee, from five years prior to the filing of the initial complaint through the earlier of: (i) the date, if any, Avior changes its contract to expressly include Exit Fees; and (ii) the date of class certification."  Both Plaintiffs Cavalieri and Isea are citizens of Venezuela but Isea is additionally a legal permanent resident of the United States domiciled in Florida.  Defendant Avior is a Venezuelan airline with its principal place of business in Venezuela.

Plaintiffs alleged that the parties are minimally diverse under the Class Action Fairness Act (CAFA), codified as 28 U.S.C. § 1332(d).  Plaintiffs alleged that they established jurisdiction under 28 U.S.C. § 1332(d)(2)(C) because they satisfy the requirement therein that "any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state."  CAFA also requires that the class action concern an amount in controversy in excess of $5 million and comprise at least 100 class members.  28 U.S.C. § 1332(d)(5)–(6).

Plaintiffs argued that they meet diversity jurisdiction under 28 U.S.C. § 1332(d) because one of the Plaintiffs, Isea, is effectively "deemed a citizen" for diversity purposes.  Indeed, Congress provided in its 1988 amendment to § 1332(a) that "an alien admitted to

the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Pub. L. No. 100-702, § 203, 102 Stat. 4646 (1988). We applied the statute accordingly in *Foy v. Schantz, Schatzman & Aaronson, P.A.*, 108 F.3d 1347 (11th Cir. 1997). However, the "deemed a citizen" language upon which we relied in *Foy*—which we decided in 1997—comes from an earlier version of § 1332(a); in 2011, Congress removed this language from the statute as part of the Federal Courts Jurisdiction and Venue Clarification Act. *See* Pub. L. No. 112-63, § 101, 125 Stat. 758 (2011). Under the current version of § 1332(a), a foreign citizen admitted to the United States for permanent residence is not a "citizen[] of a State," but rather a "citizen[] or subject[] of a foreign state." 28 U.S.C. § 1332(a)(2). Under the amended version of the statute, there is no diversity between citizens of a foreign state. *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 125, 127 (2d Cir. 2020) (per curiam) (holding that the amended version "does not confer diversity jurisdiction where a permanent resident alien sues a nonresident alien" and "federal courts do not have diversity jurisdiction over lawsuits between two foreign parties"). As a result of this change in statutory law, *Foy* no longer controls. *See United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999) ("As a rule, our prior precedent is no longer binding once it has been substantially undermined or overruled by . . . a change in statutory law . . ."). Given the language of the 2011 amendment, there is no diversity of citizenship under the current version of § 1332(a) between the

named Plaintiffs and the Defendant, neither of whom are United States citizens.

Although Plaintiffs also alleged that "at least one class member . . . belong[ed] to a different state than that of the airline," the second amended complaint was defective in that it still alleged that the named Plaintiffs belong to a state for diversity purposes—which they do not because of the removal of the "deemed a citizen" language from § 1332(a). To cure this defect, the Plaintiffs filed a renewed motion before this court to amend its second amended complaint under 28 U.S.C. § 1653, which we granted.[2]

The Plaintiffs' motion to amend explained that its second amended complaint had made the alternative argument that they establish minimal diversity under CAFA. The third amended complaint, which Plaintiffs will file in the district court on remand, will amend paragraph 18 of Plaintiffs' second amended complaint to now read: "as a national class at least one unnamed class member is a U.S. citizen and resident and, thus, is diverse from Avior, a Venezuelan airline[.]" This amended language removes any allegation that the named Plaintiffs are diverse from the Defendants, as they are not, instead relying solely on the unnamed class members to establish jurisdiction under CAFA. Defendant's response to

---

[2] Section 1653 provides that "[d]effective allegations of jurisdiction may be amended . . . in the trial or appellate courts."

Plaintiffs' renewed motion to amend[3] raised the question of whether the new allegations are sufficient to establish minimal diversity under CAFA. We find that they are.

We have previously demonstrated that, at the motion to dismiss stage, the Plaintiff need only establish that the face of his complaint meets the jurisdictional requirements of CAFA to invoke the court's jurisdiction. *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1045 (11th Cir. 2020). After all, Plaintiffs have not yet had occasion to file any jurisdictional evidence in the record aside from the allegations contained in its complaint. At this point, the jurisdictional burden of the party seeking a federal forum through CAFA is to show that the case stated in the complaint meets federal jurisdictional requirements. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010). In so doing, courts may use their judicial experience and common sense to determine if the case meets the federal jurisdictional requirements from the pleadings alone. *Id.*

Thus, it is enough that the Plaintiffs here have plausibly alleged that an unnamed plaintiff in the class is a citizen of the United States, while Defendant Avior is a Venezuelan citizen with its

---

[3] This motion was erroneously filed and docketed as a motion to dismiss the appeal for lack of jurisdiction. Avior clarified at oral argument that the motion was intended to be a response to the Plaintiffs' renewed motion to amend its second amended complaint instead.

principal place of business in Venezuela. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 n.24 (11th Cir. 2007) ("The new § 1332(d) replaces [the] . . . 'complete diversity' requirement with a 'minimal diversity' requirement under which, for purposes of establishing jurisdiction, only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant.") (internal citations omitted).  This is because we agree with the Plaintiffs that it is sufficiently plausible that its "national class," which it defines as "all persons that Avior charged an Exit Fee, from five years prior to the filing of the initial complaint through the earlier of: (i) the date, if any, Avior changes its contract to expressly include Exit Fees; and (ii) the date of class certification[,]" includes at least one U.S. citizen who is diverse from the Defendant.  It is also sufficiently plausible that this class definition would satisfy the other requisites under CAFA—that the amount in controversy exceeds $5,000,000 and consists of at least 100 members.  28 U.S.C. § 1332(d)(5)–(6).

It is for a later stage in the litigation for the district court to make the factual determination on whether there is indeed jurisdiction in this case. *See Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.8 (11th Cir. 2010) (per curiam) ("[D]iscovery may uncover certain facts . . . that would destroy the district court's jurisdiction over the case and require the district court to dismiss the case under Federal Rule of Civil Procedure 12(b)(1).").  But all that is required at this point is that the parties plausibly allege facts showing

jurisdiction.  We thus conclude that the Plaintiffs plausibly allege facts that would establish diversity jurisdiction under the new allegations that will be contained in Plaintiffs' third amended complaint.

## C.  The Airline Deregulation Act Does Not Preempt Plaintiffs' Breach of Contract Claim

"In 1978, Congress eliminated the regulation of air carrier prices through the Airline Deregulation Act." *Bailey*, 889 F.3d at 1267.  "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).  The preemption provision of the ADA states that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  "This language expresses a broad preemptive intent that encompasses state enforcement actions 'having a connection with or reference to airline rates, routes, or services.'" *Bailey*, 889 F.3d at 1262 (quoting *Morales*, 504 U.S. at 384) (internal quotation marks omitted).

Though broad, the ADA preemption provision is not without limits.  "The ADA does not . . . preempt a 'state-law-based court adjudication' . . . concerning a contractual obligation 'voluntarily' undertaken by an air carrier." *Bailey*, 889 F.3d at 1268 (internal

citations omitted).  "Therefore, an air carrier may bring a state action to enforce the terms of a contract, whether express or implied, or the person with whom an air carrier has contracted may bring a breach-of-contract action . . . so long as the action concerns voluntary commitments and not state-imposed obligations."  *Id.* (citing *Wolens*, 513 U.S. at 232–33, 237).

Plaintiffs concede, as they must, that their breach of contract action due to Defendant charging fees for passage beyond those included in the ticketed fares "related to" the price charged by Defendant.  However, Plaintiffs argue that their "breach-of-contract action—through which they only sought to 'give effect to bargains offered by [Defendant]'—fits squarely within the *Wolens* exception to ADA preemption."  We agree.

Plaintiffs pled a breach of contract claim that seeks to enforce the voluntary agreement of the parties.  Plaintiffs allege that Defendant agreed to transport them from Miami to Venezuela for the ticketed price, inclusive of all fees and taxes, and breached that agreement by charging an additional $80 Exit Fee.  Accordingly, Plaintiffs' claim seeks recovery solely for the alleged breach of Defendant's own, self-imposed undertaking regarding the price charged for transport.  "[T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect

of law' within the meaning of § 1305(a)(1)."[4]  *Wolens*, 513 U.S. at 228–29 (internal quotation marks omitted and alterations adopted). Accordingly, "the ADA permits state-law-based court adjudication of routine breach-of-contract claims" like this one.  *Id.* at 232.

We are not persuaded by Defendant's argument that the contract term upon which Plaintiffs stake their claim "was not a voluntary undertaking by [Defendant]" because it "clearly related to pricing."  First, Defendant's argument misconstrues the scope of self-imposed undertakings, the breach of which may be adjudicated in state court as held in *Wolens*.  That an undertaking relates to price does not necessarily make it subject to preemption.  "The ADA contains no hint" that "Congress meant to channel into federal courts the business of resolving . . . the range of contract claims relating to airline rates, routes, or services."  *Wolens*, 513 U.S. at 232.  Indeed, the undertakings allegedly breached in *Wolens* also related to price.  *Id.* at 226 ("Plaintiffs' claims relate to 'rates,' *i.e.*, [Defendant's] charges in the form of mileage credits for free tickets and upgrades.").

---

[4] Congress reenacted Title 49 of the U.S. Code in 1994 and revised this to read: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  "Congress intended the revision to make no substantive change."  *Wolens*, 513 U.S. at 223 n.1.

Second, Plaintiffs have not invoked a state law or regulation that seeks to alter the voluntary agreement of the parties embodied in the alleged contract. This case stands in contrast to *Bailey*, where we found the plaintiff's claim preempted because plaintiff "invoke[d] the balance billing provision [of Florida's personal injury protection statute] as 'a means to guide and police' [defendant's] rates." *Bailey*, 889 F.3d at 1272 (quoting *Wolens*, 513 U.S. at 228). The issue here is not whether the charged fare should be modified by state law or regulation, but whether that voluntarily agreed-upon charged fare contemplated an Exit Fee in addition to the ticket price, despite the lack of disclosure of such a fee and, at least in some instances, express representation that the ticket price included all taxes and fees.[5] As we noted in *Bailey*, "[i]f [the defendant] had voluntarily agreed to the fee schedule rate, the ADA would not preempt the enforcement of the fee schedule rate." 889 F.3d at 1272 n.26 (citing *Nw., Inc. v. Ginsberg,* 572 U.S. 273, 285–88 (2014)). That is precisely the case here, where Plaintiffs allege that the contract reflects Defendant's voluntary agreement to transport Plaintiffs at the charged fare without additional fees.

---

[5] Unlike Plaintiff Cavalieri, Plaintiff Isea did not include with the second amended complaint, a receipt, or other documentary evidence, expressly indicating that the ticketed fare included taxes and fees.

Defendant misapplies the Ninth Circuit's decision affirming summary judgment due to ADA preemption in *Sanchez* to argue that Plaintiffs' pleading must identify a separate contractual provision obligating Defendant to disclose the Exit Fee for there to be a self-imposed undertaking that avoids preemption under *Wolens*. The reasoning of *Sanchez* does not apply here because Plaintiffs' breach of contract action merely seeks to give effect to the bargain allegedly offered by Defendant and accepted by Plaintiffs, and not to expand Defendant's obligations beyond those expressed, and voluntarily agreed to, in the contract.

In *Sanchez*, the airline charged the plaintiff the contracted rate for a flight to Mexico. As a Mexican citizen, the plaintiff claimed the airline breached a contractual obligation to issue her a refund of the portion of the fare attributable to a tourism tax imposed by the Mexican government on noncitizens that the airline charged all passengers, regardless of citizenship. *Sanchez*, 590 F.3d at 1028. The *Sanchez* court found that, if the airline "made a contractual commitment to advise passengers about the Mexico tourism tax, not to collect it from exempt passengers, and to refund that portion of the price attributable to the tax," then the contractual commitment would be enforceable under *Wolens*. *Id.* at 1030. But the court concluded that the airline made no such commitment— therefore, the airline had "no contractual obligation" to advise passengers or to take any action with respect to the "tourism tax." *Id.*

at 1031. Consequently, the court affirmed the district court's dismissal of the plaintiff's claims as preempted by the ADA. *Id.* But unlike the instant case, the airline in *Sanchez* transported plaintiff at the agreed-upon rate and did not breach a self-imposed obligation. Here, Plaintiffs allege that the Defendant committed to transport them at the ticketed price yet breached that obligation by charging an additional fee not included in the ticketed price or disclosed in the Contract of Carriage.

The alleged obligation to provide transport at the ticketed price free from additional charges is a self-imposed undertaking, the alleged breach of which gives rise to a cause of action that *Wolens* protects from preemption. *Wolens*, 513 U.S. at 232–33. Accordingly, we reverse the district court's holding that the ADA preempts Plaintiffs' breach of contract claim.

### D.    Plaintiffs Pled a Plausible Cause of Action for Breach of Contract

Defendant contends that if Plaintiffs' claim is not preempted, the dismissal order could still be affirmed for the alternative reason that Plaintiffs failed to plead a term or terms of the contract that were allegedly breached. The district court declined to rule on this ground for dismissal, which appears to rely on the erroneous notion that Plaintiffs' claim fails absent citation to an express term obligating Defendant to disclose the Exit Fee. While we may affirm dismissal on any ground supported by the record, *Statton v. Fla.*

*Fed. Jud. Nominating Comm'n*, 959 F.3d 1061, 1065 (11th Cir. 2020), the record here does not support dismissal for failure to state a claim.

Plaintiffs' second amended complaint[6] plausibly alleges that Defendant breached its contract with Plaintiffs by requiring payment of the Exit Fee in addition to the ticketed price. Plaintiffs allege that "[w]hen a passenger makes a reservation for air transportation on [one of Defendant's flights] by any of the means provided for by [Defendant], the passenger and [Defendant] enter into a contract of carriage for services relating to that flight." The second amended complaint attaches Defendant's published "Contract of Carriage for USA," which permits reservations to be made directly with Defendant or through travel agencies, other airline reservation systems, or the internet. It alleges that third-party ticketing entities through which Defendant's Contract of Carriage permits reservations are agents acting on Defendant's behalf for the purpose of making reservations and collecting payment. It further alleges that the contract between Defendant and passengers consists of Defendant's Contract of Carriage for USA and the material terms and conditions provided by Defendant and expressly included within the passenger's ticket at the time of purchase

---

[6] Plaintiffs' second amended complaint remains the active complaint in this case until they file their third amended complaint with the district court on remand.

(whether issued directly by Defendant or through an agent or other airline).  Finally, the second amended complaint alleges that the contract provides that passengers pay a contractually-defined amount for transportation by Defendant, as reflected on the reservation ticket at the time of purchase, that Defendant failed to sufficiently disclose the requirement to pay additional fees, and that Defendant breached the contract by requiring Plaintiffs to pay the Exit Fee not disclosed in the contract.  Plaintiffs' plausible allegations, if true, establish breach of a valid contract by Defendant.[7]

That is not to say that Defendant does not have potentially viable defenses.  For instance, Defendant notes that its Contract of Carriage identifies certain web pages as being "of interest" and that one of those web pages ("Fares and Other Charges for USA") discloses that there may be charges for taxes and duties in addition to the fare.  Defendant also references other web pages that it contends undermines Plaintiffs' allegations.  Defendant argued below in its motion to dismiss Plaintiffs' second amended complaint that "[t]he operative Contract incorporate[d] by reference the unambiguous terms contained on [Defendant's] website" while Plaintiffs countered that the description of web pages as being "of interest"

---

[7] While a weaker case, this holds true even for those passengers who have yet to produce documentation from the ticketing agent describing the charged fare as including taxes and fees.

did not provide direct and conspicuous notice that those web pages were incorporated by reference into the contract.

The district court did not address whether Defendant's Contract of Carriage incorporates those web pages by reference, or, if it does, how that disclosure should be interpreted in view of representations at ticketing that the charged fare includes all taxes and fees. Moreover, while describing its website disclosures in its responsive brief, Defendant did not develop an incorporation by reference argument on appeal with any citation to the applicable law, much less explain how those website disclosures should be interpreted in view of the alleged representation at ticketing that the charged fare included taxes and fees. We decline to consider these issues in the first instance, and those pivotal questions of contract interpretation remain open for adjudication on remand. *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1306 n.15 (11th Cir. 2010) (noting that we may exercise our discretion to decline ruling on an alternative ground for affirmance when appellate review would benefit from reasoned deliberation by the district court).

## III.    CONCLUSION

For the reasons explained above, we REVERSE the decision of the district court and REMAND this case for further proceedings consistent with this opinion.

22                          Opinion of the Court                          19-11330

**REVERSED AND REMANDED.**