# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 2, 2010

Lyle W. Cayce
Clerk

No. 09-10971

LILIAN ONOH,

>                        Plaintiff - Appellant

v.

NORTHWEST AIRLINES, INC.,

>                        Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Lilian Onoh ("Onoh") appeals the district court's grant of summary judgment on her state-law breach-of-contract and intentional-infliction-of-emotional-distress ("IIED") claims against Appellee Northwest Airlines ("Northwest"). The district court found that Onoh's claims were preempted by the Airline Deregulation Act ("ADA"). We AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

Onoh, a Nigerian national and diplomat, purchased a round-trip ticket from Northwest and its partner, KLM "Royal Dutch" Airlines, from Nigeria to Dallas-Fort Worth International Airport ("DFW") by way of the Netherlands.

No. 09-10971

Onoh carries both a personal and a diplomatic passport, but her trip was unrelated to diplomatic business.

Onoh's return itinerary also included a stopover in Amsterdam. The Netherlands, pursuant to international agreements referred to by the parties as "the Schengen Agreements," requires certain air passengers passing through the country to acquire an airport transit visa ("ATV"). Passengers must possess a valid ATV at the time of entry or they will not be permitted to continue on to their final destinations from the Netherlands. Carriers are responsible for verifying that international passengers have the correct travel documents under the Schengen Agreements, and they face penalties for failing to do so.

When Onoh tried to check in for her flight at DFW on December 5, 2007, an automated program informed the Northwest ticketing agent that Onoh, as a Nigerian national, needed an ATV in order to travel through Amsterdam. Because her trip was for personal reasons, Onoh presented the Northwest agent her personal passport. Her personal passport contained an ATV that was valid through December 5, 2007. But Onoh was scheduled to arrive in Amsterdam on December 6. As a result, the agent informed Onoh that she could not board the plane because she did not have an ATV that would be valid on the date she would arrive in Amsterdam. Onoh then presented her diplomatic passport and explained that, as a diplomat, she did not need an ATV. As Onoh had already stated that she was traveling for personal, rather than official, reasons, the Northwest agent declined to accept Onoh's diplomatic passport. After speaking with several additional Northwest employees, each of whom told Onoh that she could not travel without an ATV that was valid on December 6, Onoh left the airport.

Over the next several days, Onoh alleges that she spoke with a representative of the Dutch consulate who informed her that she did not need an ATV to travel through the Netherlands because she was a diplomat. She

further alleges that both a Northwest customer service agent and a KLM representative also told Onoh that she did not need an ATV because of her diplomatic status.  On December 6 and 9, Onoh again tried to board flights from DFW traveling through Amsterdam using her diplomatic passport.  She was refused on both occasions by Northwest staff because she did not have a valid ATV.  A few days later, another Northwest employee allegedly told Onoh that the United States Department of State would not allow her to fly.   Onoh eventually returned to Nigeria on February 10, 2008, after securing a new ATV.

Onoh sued Northwest for discrimination under 49 U.S.C. § 40127 and for breach-of-contract and IIED under state law.  Northwest filed a motion to dismiss and an alternative motion for summary judgment.  Northwest claimed that Onoh had failed to state a discrimination claim and that her state-law claims were preempted by the ADA.  Onoh agreed to dismiss her discrimination claim but opposed Northwest's motion on the state-law claims. The district court granted Northwest's motion for summary judgment, finding that Onoh's breach-of-contract and IIED claims were preempted by the ADA. Onoh timely appealed.

## II.  STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo, applying the same standard as the district court.  *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006).  Our inquiry "is limited to the summary judgment record before the trial court."  *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009).  We view the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Bolton*, 472 F.3d at 263;

*see* Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.  DISCUSSION

The only issues before the court are: (1) whether the ADA preempts Onoh's state-law IIED claim; and (2) whether the ADA preempts Onoh's state-law breach-of-contract claim.  We address each claim in turn.

A.  IIED Claim

Onoh first claims that the district court erred when it concluded that her IIED claim was preempted under the ADA.  Her claim arises from a conversation she had with a Northwest agent, in which the agent allegedly stated that "the U.S. State Department would not permit [her] to travel . . . ."  Onoh contends that the district court incorrectly held that this conversation and the resultant claim were sufficiently related to Northwest's provision of "services" to trigger preemption.

The preemption provision of the ADA provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1) (2006).  The Supreme Court has interpreted the preemptive effect of the ADA broadly.  Any state law, including state common law, "having a connection with or reference to" airline prices, routes, or services is preempted unless the connection or reference is "too tenuous, remote, or peripheral."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 390 (1992).

In applying *Morales*, we have had occasion to specifically address the scope of the term "service" as used in the ADA preemption provision.  In *Hodges v. Delta Airlines*, 44 F.3d 334 (5th Cir. 1995) (en banc), we held that:

> Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and

> baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Id.* at 336 (alteration in original). The question of whether Onoh suffered an IIED when a Northwest agent prohibited her from boarding a flight on the grounds that the State Department would not permit Onoh to travel clearly falls within this definition of airline "services." Moreover, we reject Onoh's contention that her claim is "tenuous, remote, or peripheral" with respect to Northwest's provision of "service" because it only addresses the manner in which she was refused service rather than the fact that service was refused. Northwest's decision to deny Onoh boarding cannot be divorced from its stated reasons for denying her boarding. Accordingly, Onoh's IIED claim is preempted by the ADA.

B. Breach-of-Contract Claim

Onoh next claims that the district court erred in concluding that her breach-of-contract claim is preempted by the ADA. More precisely, Onoh contends that, while her claim clearly falls within the scope of preemption discussed in *Morales*, she is excluded from the application of the ADA preemption provisions by the so-called *"Wolens* exception."

As Onoh contends, ADA preemption is not absolute in certain cases that would otherwise fall outside the preemptive boundaries described in *Morales*. Specifically, the Supreme Court has held that the ADA's preemption clause does not extend so far as to "to shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). "[S]tate-law-based court adjudication of routine breach-of-contract claims" is permissible so long as a court makes "no enlargement or enhancement [of the contract] based on . . . state

5

laws or policies external to the agreement." *Id.* at 232-33.  Thus, an otherwise preempted claim may remain viable under the ADA if it falls within the two-prongs of the *Wolens* exception: 1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement.  *Id.*; *see also Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 287 (5th Cir. 2002).

Onoh contends Northwest incorrectly interpreted the Schengen Agreements when it concluded she required an ATV and refused to grant her access to her flight as a result.  The first step in deciding a *Wolens*-exception case is determining whether the airline breached its own, self-imposed undertaking.  Because we conclude that this case does not involve the airline's "self-imposed" undertaking, we need not reach the second prong of the *Wolens* analysis concerning state regulation.

Here, the only way to assess whether the airline breached its duty is to determine whether it refused to transport a passenger who was fit for travel.  To make that determination, the court would be required to reach beyond the contract and interpret a variety of external laws that were not expressly incorporated in the contract.  Calling the Schengen Agreements "self-imposed" obligations of Northwest and Onoh is a large stretch from the simple references to the need to comply with all applicable law addressed in the limited portions of the contract contained in the record.  Whether or not Northwest advised its passengers of the need to comply with international law, such law would apply. Therefore, the airline's (and Onoh's[1]) obligations under the Schengen Agreements are not "self-imposed," and the first prong of the *Wolens* exception

---

[1]    Onoh's counsel stated at oral argument that Onoh's obligation to have the documentation necessary under the Schengen Agreement was a "condition precedent" to her right to contractual relief; this argument further demonstrates the "outside the contract" nature of this claim.

No. 09-10971

is not met. *See Sanchez v. Aerovias De Mex., S.A. de C.V.*, 590 F.3d 1027, 1030-31 (9th Cir. 2010) (finding no contractual commitment where the only alleged incorporation occurred with respect to a passenger duty rather than airline duty).[2]    As Onoh's counsel conceded, Onoh's claim is preempted if the *Wolens* exception does not apply, and, as we so find, her state law claim is barred.[3]

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment.

---

[2] We also note that Texas courts have already addressed this question in a very similar context. In *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 756 (Tex. 2003), the Texas Supreme Court held that breach-of-contract actions flowing from an airline's boarding policies are preempted under the ADA. Thus, even if we were to apply Texas law here, Texas would find these claims preempted.

[3] We also question Onoh's suggestion that the function of ADA preemption in these circumstances would be to leave passengers without remedy if airlines breach their contractual obligations. The applicable statutory provisions and regulations in this area explicitly create a number of remedial avenues for injured passengers. *See, e.g.*, 49 U.S.C. § 41712 (2010) (providing remedial process for unfair and deceptive practices by airlines); 14 C.F.R. § 253.7 (2010) (remedy for failure to provide adequate notice of price-related contractual terms);14 C.F.R. § 250.1-.9 (2010) (remedy for denied boarding due to overselling of flights); 14 C.F.R. § 254.4 (2010) (remedy for mishandling of domestic baggage). The fact that certain, more advantageous forms of relief are not available merely reflects Congress's preemptive desire to carefully control the way in which regulation is imposed on the airlines.