# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2023

Lyle W. Cayce
Clerk

No. 22-10692

Leia Montgomery; Kristen Meghan Kelly,

*Plaintiffs—Appellants*,

*versus*

Delta Air Lines, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-2715

Before Wiener, Stewart, and Engelhardt, *Circuit Judges*.

Per Curiam:*

This appeal arises from the district court's dismissal of Leia Montgomery and Kristen Kelly's (collectively "Appellants") lawsuit against Delta Air Lines ("Delta") on preemption grounds. Because Appellants' breach-of-contract claim does not qualify for the *Wolens* exception and their remaining state-law claims are preempted by the Airline Deregulation Act (the "Deregulation Act"), we AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10692

# I.  BACKGROUND

### A.  *Mandatory Masking During the COVID-19 Pandemic*

The effects of the COVID-19 pandemic were widespread, rupturing through nearly every industry, domestically and abroad. Few industries were affected more than public transportation and commercial air travel because they are predicated on close contact for long durations. World health leaders eventually determined that the spread of COVID-19 could be mitigated by wearing a mask and maintaining physical distance from others. Soon thereafter, the President of the United States promulgated an executive order which required commercial airline companies to implement masking and social distancing policies in accordance with the Center for Disease Control and Prevention's (the "CDC") guidelines.[1]

Shortly after the President's executive order, the CDC issued an order requiring individuals to "wear masks over the mouth and nose when traveling on conveyances into and within the United States."[2] The CDC's order came on the heels of the Department of Homeland Security's directive to the Transportation Security Administration to aid "the CDC in the enforcement of any orders or other requirements necessary to . . . mitigate the spread of COVID-19."[3]  This string of government decisions serves as the backdrop for the instant appeal.

---

[1] *See* Exec. Order 13998, *Promoting COVID-19 Safety in Domestic and International Travel*, 86 Fed. Reg. 7205 (Jan. 21, 2021).

[2] *See* CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

[3] *See* DHS, *Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed* (Jan. 27, 2021).

No. 22-10692

B.     *Appellants' Attempt to Board Delta Flights Without Masks*[4]

1.     *Leia Montgomery*

Montgomery carries signed medical documentation showing that she suffers from post-traumatic stress disorder ("PTSD") and claustrophobia. Her documentation explains that her diagnoses comport with the standards set by the Americans with Disabilities Act. Her disorder renders her unable to wear a conventional mask, so she instead puts on a face shield, hat, and scarf when travelling.

On February 20, 2021, Montgomery tried to complete the check-in process for her flight with Delta. She wore her usual face shield, hat, and scarf and gave the Delta gate agents medical documents proving her disability. The gate agents called over an emergency physician to evaluate whether her documentation entitled her to wear her attire instead of a mask over her mouth and nose. The physician informed her that her disabilities did not qualify her for maskless travel, and Delta refused to allow her to board. Notably, Montgomery alleges that Delta also put her on its no-fly list when she attempted to accommodate the mask mandate by putting her scarf over her mask and face, like a veil. She asserts that this added to her embarrassment and trauma.

2.     *Kristen Kelly*

Kelly is a United States Airforce veteran who carries medical records explaining how masks cause her body to produce a cardiac arrhythmia response. Her disability, like Montgomery's, also stems from a PTSD diagnosis. Delta preapproved Kelly to fly without a mask before her March

---

[4] While Appellants sue Delta together in the instant appeal, the events giving rise to this suit occurred at two different times. Montgomery was denied entry on her flight in February 2021 and Kelly in March 2021.

2021 flight. Additionally, in preparation for her flight, she provided Delta with a negative COVID-19 test. Despite all of this, she was greeted with skepticism by the Delta gate agents at check in and was ushered to a telemedicine physician for a determination whether her medical disability permitted maskless travel.

The physician asked Kelly to provide the basis of her PTSD diagnosis, which required her to share details of a sexual assault she suffered while serving overseas. This disclosure occurred in front of the other passengers on her intended flight because Delta deboarded the plane to resolve her masking situation. She maintains that this invasion of privacy led to great embarrassment and added to her traumatic experience.

## C.    *District Court Proceedings*

Appellants sued Delta for multiple violations of state law, including breach of contract, public disclosure of private facts, and intentional infliction of emotional distress ("IIED") or negligent infliction of emotional distress ("NIED"). They also sought declaratory relief under the Air Carrier and Access Act ("ACAA"). Delta moved to dismiss the suit under Rule 12(b)(6). Appellants then filed an amended complaint, which prompted Delta to file another motion to dismiss. Ultimately, the district court dismissed Appellants' claims with prejudice.

First, the district court stated that the Deregulation Act preempted Appellants' breach-of-contract claims, and that they failed to establish that they qualified for the *Wolens* exception.[5] Second, it explained that their IIED and NIED claims were preempted by the Deregulation Act, Federal Aviation

---

[5] *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–232 (1995) (permitting plaintiffs to circumvent the Deregulation Act when they identify specific contractual obligations that create a self-imposed undertaking by the airline carrier).

Act ("FAA"), and ACAA. Regarding Appellants' emotional distress claims, the district court held that it would dismiss them even if they were not preempted because Appellants failed to state a claim for which relief could be granted. Appellants timely appealed.

On appeal, Appellants ask this court to consider whether: (1) the *Wolens* exception applies to their breach-of-contract claim; (2) the Deregulation Act preempts their invasion of privacy (public disclosure of private facts) claim; and (3) the FAA, Deregulation Act, and the ACAA preempt their IIED and NIED claims, or either of them. They also ask that we consider any of these claims on their merits if we hold that any of them are not preempted.

## II. Standard of Review

We review a district court's decision on a Rule 12(b)(6) motion *de novo*. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).

## III. Discussion

### A. *Appellants Do Not Qualify for the* Wolens *Exception*

Appellants assert that Delta's contract of carriage[6] ("the Contract") created a self-imposed obligation by providing that "Delta will make every effort to accommodate a Person with a Disability and will not refuse to transport a person *solely* based on the person's disability, except as permitted or required by law." Appellants maintain that, by denying them entry onto

---

[6] Delta's contract of carriage stipulates that Georgia law governs all disputes.

No. 22-10692

their flights, Delta violated the express terms of the Contract, and that this violation qualifies them for the *Wolens* exception.

Delta contends that Appellants simply cherry-picked language from the Contract without recognizing other potentially contradictory provisions. It explains that the Contract gives Delta broad discretion to deny passengers entry on to a flight when it reasonably believes that denial is necessary to protect the passenger, its crew, or its other passengers. Delta thus, maintains that the district court correctly dismissed Appellants' claims. We agree.

The Deregulation Act's preemption provision prevents States from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) (citing 49 U.S.C. § 41713(b)(1)). The Supreme Court has generally interpreted this provision broadly. *Id.* To that end, the Court has explained that state common law actions that have "a connection with or reference to" airline services are preempted unless the connection is "too tenuous, remote, or peripheral." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 390 (1992) (citation omitted). This court has had the opportunity to interpret "services" under the Deregulation Act on multiple occasions:

> Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as 'services' and broadly to protect from state regulation.

6

*Onoh*, 613 F.3d at 599–600 (alteration in original) (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)).

In *Wolens*, the Supreme Court carved out an exception to the Deregulation Act's preemptive effect for the "adjudication of routine breach-of-contract claims." 513 U.S. at 232. The Court explained that the "[Deregulation Act's] preemption clause . . . stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232–33. This court analyzes *Wolens* claims with a two-pronged test: "1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement." *Onoh*, 613 F.3d at 600. When a plaintiff fails to satisfy the first prong, we need not analyze the second. *See id.* (declining to reach the second prong when the "case does not involve the airline's 'self-imposed undertaking'").

Here, Appellants do not qualify for the *Wolens* exception because they have not established that Delta violated a "self-imposed obligation." On its face, Appellants' argument is straightforward: The Contract provides that Delta will accommodate disabled persons and explains that it would not deny services to those with qualifying disabilities. Appellants thus claim that Delta violated the Contract by refusing services to them. This argument, however, fails to account for other provisions in the Contract that offer context on the legal permissibility of Delta's actions. For example, Rule 7 of the Contract, entitled "Refusal to Transport," provides that:

> Whenever necessary to comply with any law, regulation or government directive or request; or when advisable in Delta's sole discretion due to weather or other conditions beyond Delta's control

. . .

> Delta may refuse to transport any passenger, or may remove any passenger from its aircraft, when refusal to transport or removal of the passenger is reasonably necessary in Delta's sole discretion for the passenger's comfort or safety, for the comfort or safety of other passengers or Delta employees[.]

By its terms, nothing in the Refusal to Transport clause prevents its enforcement against those with disabilities. Instead, Delta expressly broadened Rule 7's enforcement to instances when it is "reasonably necessary in [its] sole discretion." As to them, Appellants do not challenge Rule 7's validity, although they do take issue with inconsistencies in its application.[7] Rather, they assert that the mere inclusion of the Accommodation clause allows them to benefit from the *Wolens* exception because that language—in a vacuum—proves Delta violated its own terms.

Essentially, Appellants ask this court to only pay attention to the language they identified in support of their claim. However, prevailing contract law principles and Georgia state law require us to look to the entire contract when discerning whether a party has breached it. *See Horwitz v. Weil*, 569 S.E.2d 515, 516 (Ga. 2002) (explaining that Georgia law requires contracts to be considered as a whole, giving effect to each provision to harmonize them, and rejecting any construction that renders portions of the contractual language meaningless). After considering both the Accommodation and Refusal to Transport provisions, we conclude that Delta did not breach the Contract by merely exercising its discretion to enforce one clause over another. On that point, Appellants do not cite any

---

[7] Appellants highlight Delta's inconsistency in applying Rule 7 as grounds for holding in their favor. But Rule 7 is discretionary and depends on the circumstances of each individual flight.

No. 22-10692

law or language in the Contract compelling Delta to defer to the Accommodation clause over the Refusal to Transport provision.

Absent legal support that enforcing one section of a contract over another constitutes a breach, Appellants fail to prove that Delta breached the Contract. This is especially true when, as here, they have provided no other evidence that Delta prevented entry "solely based on" Appellants' respective disabilities. Because Appellants have not demonstrated that Delta breached a self-imposed obligation, they do not qualify for the *Wolens* exception, and the Deregulation Act preempts their breach-of-contract claim. *See Onoh*, 613 F.3d at 600.

B.    *Appellants' Remaining Claims are Preempted*

Appellants also assert that the district court incorrectly held that their invasion of privacy and IIED and/or NIED claims were preempted by the Deregulation Act, FAA, and ACAA. They assert that these statutes do not preempt state tort claims unrelated to "services." They contend that Delta's harassing behavior is the basis for their causes of action and aver that Delta's behavior does not fall under "services" as contemplated by the Deregulation Act. We disagree.

In *Onoh* we provided a non-exhaustive list of what qualifies as "services" under the Deregulation Act: "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Onoh*, 613 F.3d at 599 (quoting *Hodges*, 44 F.3d at 336). In addition to providing that list, *Onoh* is especially relevant here because, the plaintiff in that case, also brought a state-law IIED claim against an airline provider. This court determined that the Deregulation Act preempted that claim because the "question of whether Onoh suffered an IIED when a Northwest agent prohibited her from boarding a flight on the grounds that the State Department would not permit Onoh to travel clearly [fell] within

this definition of airline services." *Id.* at 600. The panel in that case also rejected Onoh's argument that her claim was too "tenuous, remote, or peripheral" to Northwest's provision of services because it only addressed "the manner in which she was refused service rather than the fact that service was refused." *Id.* We explained that "Northwest's decision to deny Onoh boarding cannot be divorced from its stated reasons for denying her boarding." *Id.*

Here, Appellants' IIED and invasion-of-privacy claims are preempted by the Deregulation Act because they clearly fall within the statute's definition of "services." Montgomery allegedly suffered IIED during the boarding process as she attempted to convince the Delta gate agents that she was exempt from wearing a mask. Likewise, Kelly alleged that Delta agents invaded her privacy when she was forced to deboard the plane and explain the basis of her PTSD in front of the Delta flight crew and her fellow passengers. To the extent Kelly suffered a potential IIED claim, it would also have stemmed from the same incident. Each of these events transpired during the boarding process and both Appellants were ultimately denied transportation by Delta. Like in *Onoh*, Delta's decision not to provide transportation to Appellants is enough for us to hold that the Deregulation Act preempts their claims. Our precedent makes clear that boarding and transportation are undeniably "services" under the Deregulation Act. *Onoh*, 613 F.3d at 599. Moreover, Appellants' interactions with the Delta gate agents are not substitutes for "the fact that service was refused." *Id.* at 600. Therefore, the district court correctly dismissed Appellants' claims on preemption grounds.

Because the Deregulation Act preempts all of Appellants' state-law tort claims, we need not address whether the FAA and ACAA do the same. Furthermore, we decline to reach the merits of Appellants' IIED and invasion-of-privacy claims because of their preempted status.

No. 22-10692

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Appellants' claims as preempted by the Deregulation Act.