# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2024

Lyle W. Cayce
Clerk

––––––––––

No. 23-11036

––––––––––

Aidan Bevacqua; Amy Marcin; Kyle Walton, *individually and on behalf of others similarly situated*; Daniel Marcin,

*Plaintiffs—Appellants*,

*versus*

Southwest Airlines Company, *a Texas Corporation*,

*Defendant—Appellee*.

––––––––––––––––––––––––––––

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-1837

––––––––––––––––––––––––––––

Before Jones, Smith, and Ho, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs filed a class action seeking damages from Southwest Airlines for failing to refund security fees, rather than issue travel credits, for cancelled reservations for nonrefundable tickets. Plaintiffs argue that Southwest's Contract of Carriage incorporated by reference a regulation requiring those security fees to be refunded, therefore making Southwest contractually

––––––––––––––––––

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

liable for its failure to refund those fees. The district court dismissed Plaintiffs' claim, holding that it is preempted under the Airline Deregulation Act. We affirm.

When passengers purchase a ticket from Southwest, they pay the fare price, along with other charges. As required by TSA regulations, these charges include a TSA security fee of $5.60 for one-way trips and $11.20 for round trips. *See* 49 C.F.R. § 1510.5(a). TSA regulations also state that "[a]ny changes by the passenger to the itinerary are subject to additional collection or refund of the security service fee." *Id.* § 1510.9(b).

Plaintiffs are Southwest customers who purchased nonrefundable tickets but later cancelled their reservations, with their TSA fees being converted into travel credits rather than being refunded to the original form of payment. They filed a putative class action asserting that Southwest breached its contract with Plaintiffs by failing to refund the TSA fees. Plaintiffs cite section 4c(3)(i) of Southwest's Contract of Carriage, which, at the times relevant for the proposed class period, stated the following (emphasis added):

> The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets are not eligible for refunds, except as provided in this Section and Section 9b. Taxes, security fees, and Passenger Facility Charges associated with a nonrefundable fare are also *not eligible for refund except as required by applicable regulations*.

According to Plaintiffs, this provision incorporates by reference 49 C.F.R. § 1510.9(b), which Plaintiffs argue requires airlines to refund TSA fees from cancelled reservations.

Southwest moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted Southwest's motion to dismiss, holding that Plaintiffs' claim is preempted by the ADA because

the reference to "applicable regulations" in Southwest's Contract of Carriage was insufficiently specific to incorporate 49 C.F.R. § 1510.9(b).[1] Plaintiffs appealed.

The ADA preempts state enactment or enforcement of any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). However, the Supreme Court has held that this provision preempts only "state-imposed obligations," not claims for an "airline's alleged breach of its own, self-imposed undertakings." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). "[T]he ADA permits state-law-based court adjudication of routine breach-of-contract claims." *Id.* at 232. In breach of contract cases, courts are limited to "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.

As we explained in *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596 (5th Cir. 2010), this means that "an otherwise preempted claim may remain viable under the ADA if it falls within the two-prongs of the *Wolens* exception: 1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement." *Id.* at 600.

In *Onoh*, we noted that "simpl[y] referenc[ing] . . . the need to comply with all applicable law" is not enough to render an obligation self-imposed. *Id.* That is especially true when, to grant a plaintiff relief, a court must "reach beyond the contract and interpret a variety of external laws that were not expressly incorporated in the contract." *Id.*

---

[1] Southwest also moved to strike Plaintiffs' class allegations. The district court denied this motion as moot.

We agree with the district court that Plaintiffs' breach of contract claim is preempted by the ADA. Similar to *Onoh*, this case involves a mere reference to "applicable regulations." It does not specifically identify any particular regulation or body of regulations, nor does it include any other language that would clearly indicate the contracting parties' intent to incorporate 49 C.F.R. § 1510.9(b) or any other regulation. It therefore does not constitute a "self-imposed obligation" under *Onoh*.

Plaintiffs argue that this case is different from *Onoh* because Southwest's Contract of Carriage mentions compliance with "applicable regulations" in connection with a specific provision concerning security fee refunds, rather than merely including a boilerplate reference broadly stating that the contract is generally subject to all applicable laws and regulations. Plaintiffs additionally contend that there is only one regulation—49 C.F.R. § 1510.9(b)—concerning refunds of security fees.

Neither argument is persuasive. For one, section 4c(3)(i) of the Contract of Carriage does not concern only security fees. The sentence at issue additionally discusses taxes and "Passenger Facility Charges." It also refers to "regulations" in the plural, not to a single "regulation." Section 4c(3)(i) accordingly contemplates the possibility of more than one relevant regulation.

Even if section 4c(3)(i) did in fact implicate only one regulation, stating that certain charges are "not eligible for refund except as required by applicable regulations" constitutes at most an acknowledgment that such regulations might conflict with Southwest's preferred practice. It does not clearly demonstrate that Southwest has voluntarily undertaken a contractual obligation to provide such refunds. If anything, declining to provide refunds unless legally required to do so demonstrates an intent *not* to expand contractual liability for failing to issue refunds to customers.

Plaintiffs additionally point to two Texas federal district court decisions to support their position. *See Kleiner v. Southwest Airlines Co.*, No. 3:08-cv-1975-F, 2009 WL 10674260 (N.D. Tex. Aug. 17, 2009); *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552 (N.D. Tex. 2005). Of course, neither case binds us. Both also predate *Onoh*. In any event, these cases do not persuade us to adopt Plaintiffs' position in this case. *AAPL* concerned an airline's privacy policy, which promised to protect customers' personal information unless required by law to disclose such information. 370 F. Supp. 2d at 556, 565. This case presents the opposite factual scenario. Instead of affirmatively agreeing to undertake an obligation unless legally barred from doing so, in this case Southwest warned that it would not take certain actions unless required by law.

*Kleiner* doesn't help Plaintiffs, either. In *Kleiner*, the contractual language stated that "[a]ll transportation is sold and all carriage is performed subject to compliance with all applicable laws and governmental regulations." 2009 WL 10674260 at *1. But it also specifically identified which agencies' regulations applied: "those of the U.S. Department of Transportation, the Federal Aviation Administration, and the Transportation Security Administration." *Id.* Importantly, it additionally included language indicating an intent for those regulations to contractually bind the parties, stating that "many of [these regulations] are not specified herein but are nonetheless binding on [Defendant] and all passengers." *Id.* In contrast, the contractual provision in this case does not include such language.

Plaintiffs argue that holding that their claim is preempted makes the "except as required by applicable regulations" language in Southwest's Contract of Carriage superfluous. But one could argue the same about the

relevant language in *Onoh*. And, as we note above, such language serves the purpose of acknowledging the potential existence of regulations to the contrary.[2]

Finally, Plaintiffs also cite the principle that ambiguous language in a contract should be construed against the drafter. That principle does not apply here, however, because the language at issue is not ambiguous. As Plaintiffs note, "[a] contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (internal quotation omitted).

We accordingly affirm the district court's dismissal of Plaintiffs' suit.

---

[2] Plaintiffs assert that we cannot consider whether the "except as required by applicable regulations" language merely serves as an acknowledgment of potentially conflicting regulations because Southwest did not explain the provision's function this way to the district court. Even if true, however, that does not prevent us from understanding the provision accordingly. For one, *Plaintiffs* raised the surplusage concern to which we respond. And though parties generally may not raise new issues on appeal, they also are not confined strictly to the exact authorities they cited at the district court. Nor are we limited to the precise reasoning or interpretive tools used by the parties when we determine the meaning of a legal text.